IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN EWALT, et al.,

    Plaintiffs,

    v.

GATEHOUSE MEDIA OHIO
HOLDING II, INC., d/b/a THE
COLUMBUS DISPATCH, et al.,

    Defendants.

Case No. 2:19-cv-4262
Chief Judge Algenon L. Marbley
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion to Seal (Doc. 82). Defendants filed a response in support of sealing Plaintiffs' Memorandum in Opposition to Defendants GateHouse Media, LLC's and Gannett Co., Inc.'s Motion to Dismiss and one of its exhibits, Exhibit C. (Doc. 92). For the reasons that follow, the Motion to Seal (Doc. 82) is **DENIED in part**. Specifically, the Motion is denied with respect to the request to seal the information contained in Plaintiffs' Memorandum in Opposition to Defendants GateHouse Media, LLC's and Gannett Co., Inc.'s Motion to Dismiss. Defendants are **GRANTED** 14 days in which to submit a supplemental brief accompanied by affidavits or declarations addressing whether specific portions of Exhibit C contain trade secrets.

    **I. BACKGROUND**

This case concerns Defendants' alleged deceptive trade practices that damaged subscribers to the Columbus Dispatch. According to Plaintiffs, "the GateHouse Defendants advertise and offer term subscriptions to The Dispatch … for specific prices, and their customers enter into these agreements … reasonably expecting that the GateHouse Defendants will provide The Dispatch for

the number of weeks stated in those Subscription Agreements." (Doc. 42, ¶ 5). Instead, Plaintiffs allege, "the GateHouse Defendants reduce their customers' term subscriptions by sending their customers unsolicited 'premium editions' and decreasing the length of those subscriptions based on the value the GateHouse Defendants arbitrarily assign to these premium editions." (*Id.*, ¶ 7).

After Defendants Gannett Co., Inc. and GateHouse Media, LLC filed a Motion to Dismiss, (Doc. 66), Plaintiffs filed the instant Motion pursuant to the parties' Protective Order, (*see* Doc. 37, ¶ 8 (requiring that the parties file a motion to seal when using the opposing party's Confidential information in the body of any filing and giving the opposing party 14 days to file a response supporting the motion to seal)). In their Motion, Plaintiffs requested that they be permitted to file an unredacted version of their Memorandum in Opposition (the "Opposition") to that Motion to Dismiss and its accompanying exhibits. (*See* Doc. 82 at 3 (asserting that "they should be entitled to file unredacted versions of the Memorandum in Opposition and Exhibit C as part of the public record")). Defendants filed a response, arguing that Plaintiffs should be permitted to file only a redacted version of the same on the public docket. (*See generally* Doc. 91). The Motion is fully briefed and ripe for resolution.

## II. DISCUSSION

The parties' dispute concerns a series of Defendants' internal emails and Plaintiffs' use of those emails in their Opposition. Defendants contend that portions of Plaintiffs' Opposition and Exhibit C containing those emails should be redacted because they contain trade secrets. (*See generally* Doc. 91). Plaintiffs disagree. (*See generally* Doc. 95).

Courts distinguish between limiting public disclosure of information during discovery versus the adjudicative stage of a case. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016). "The line between these two stages, discovery and adjudicative,

is crossed when the parties place material in the court record." *Id.* (citing *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)). "Unlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983)). For this reason, the moving party has a "heavy" burden of overcoming a "'strong presumption in favor of openness' as to court records." *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson*, 710 F.2d at 1179); *see also Shane Grp.*, 825 F.3d at 305 ("Only the most compelling reasons can justify non-disclosure of judicial records." (quotation omitted)).

"[I]n civil litigation, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is typically enough to overcome the presumption of access." *Shane Grp.*, 825 F.3d at 308 (citation and quotations omitted). "[T]he seal itself must be narrowly tailored to serve" the reason for sealing, which requires the moving party to "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 305–06 (quotation omitted). Ultimately, the movant must show that "disclosure will work a clearly defined and serious injury … And in delineating the injury to be prevented, specificity is essential." *Id.* at 307–08 (internal citations and quotations omitted). Similarly, the court "that chooses to seal court records must set forth specific findings and conclusions which justify nondisclosure." *Id.* at 306 (quotation omitted).

### A. Plaintiffs' Opposition

In their Opposition, Plaintiffs quote a number of emails from Defendants' employees, including employees at the Columbus Dispatch. (*See* Doc. 83 at 26–27). Generally, they discuss

3

the number of premium editions to be issued, the price of those premium editions, Dispatch subscribers' frustration with the premium-edition policy, and Dispatch employees' opinions regarding the same. (*See id.*).

Defendants emphasize that the information in those emails constitutes trade secrets and that Plaintiffs' quotation of them in their Opposition should therefore be redacted. (*See* Doc. 92 at 2–6). Under Ohio law, courts consider six factors in determining whether information constitutes a trade secret:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Handel's Enter., Inc. v. Schulenburg*, 765 F. App'x 117, 122 (6th Cir. 2019) (citing *Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 F. App'x 860, 861–62 (6th Cir. 2008)).

Defendants generally assert that the information in question is "proprietary and competitively sensitive business information" and that they "will be harmed if their competitors have access to the Confidential Information and are able to gain insight into matters such as Defendants' pricing strategies, sales trends, revenues, customer preferences, and overall business condition." (Doc. 92 at 3).

This argument suffers from two flaws. One, Defendants have not demonstrated that the specific information they seek to redact from Plaintiffs' Opposition is, in fact, a trade secret. For example, Defendants assert that they take "great care to maintain the confidentiality of this information," citing a prior declaration from GateHouse Media Ohio Holdings II, Inc.'s ("GateHouse Ohio") Senior Vice President of Finance and Treasurer. In that declaration, he attests

4

that Defendant GateHouse Ohio's employees "must not disclose include [sic] confidential financial data, or other non-public proprietary company information, including, but not limited to, corporate strategies, trade secrets, specifications, pricing information, customer lists, personal customer information, and research data." (Doc. 59-1, ¶ 4).[1] But beyond this general assertion, the declaration does not meaningfully address:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Handel's Enter., Inc.*, 765 F. App'x at 122 (citation omitted). And without that information, the Court cannot justify a finding that the information at issue constitutes a trade secret that should be redacted.

Two, Defendants are required to show that "disclosure will work a clearly defined and serious injury … And in delineating the injury to be prevented, specificity is essential." *Shane Grp.*, 825 F.3d at 307–08 (internal citations and quotations omitted). General representations of some potential undefined harm, like those made by Defendants, are insufficient to justify redacting the information in question. *See id.*

Ultimately, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Shane Grp., Inc.*, 825 F.3d at 305. Even "[w]here a party can show a compelling reason for sealing, the party must [still] show why those reasons outweigh the public interest in access to those records and that the seal is narrowly tailored to serve that reason." *Kondash v. Kia Motors*

---

[1] While the declaration addresses Defendant GateHouse Ohio's efforts to protect its confidential or proprietary information, it does not appear to be applicable to the other Defendants in this matter. The Court, nonetheless, assumes that similar restrictions apply to the employees of the other Defendants.

*America, Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019) (citing *Shane Grp., Inc.*, 825 F.3d at 308). "[I]n class actions—where by definition some members of the public are also parties to the case—the standards for denying public access to the record should be applied ... with particular strictness." *Shane Grp., Inc.*, 825 F.3d at 305 (citation, internal quotations, and alterations omitted).

Defendants have not demonstrated that the information contained in Plaintiffs' Opposition is a trade secret. And, because this is a purported class action concerning central Ohio's primary newspaper, the public has at least a moderate interest in viewing the information in question. *See id.* The relevant portion of Plaintiffs' Opposition contains information regarding the Dispatch's subscription policies and Dispatch employees' opinions regarding the same. On the record before the Court, there is no reason for the Court to prevent the public from viewing that information.

### B. Exhibit C

Less definite, in the Court's view, is whether portions of Exhibit C contain trade secrets. In a few limited instances, the emails contained in Exhibit C appear to contain information regarding Defendants' internal processes and strategy that potentially could be considered trade secrets. Because the Court does not have the necessary information to make that determination at this time, the Court will grant Defendants fourteen days in which to submit a supplemental brief accompanied by affidavits or declarations addressing whether specific portions of Exhibit C contain trade secrets under Ohio's six-factor test, *Handel's Enter., Inc.*, 765 F. App'x at 122.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion (Doc. 82) is **DENIED in part**. Specifically, the Motion is denied with respect to the request to seal the information contained in Plaintiffs' Memorandum in Opposition to Defendants GateHouse Media, LLC's and Gannett Co., Inc.'s

6

Motion to Dismiss.  Defendants are **GRANTED** 14 days in which to submit a supplemental brief accompanied by affidavits or declarations addressing whether specific portions of Exhibit C contain trade secrets.  The Court will then issue an Order regarding unsealing the relevant information.

    IT IS SO ORDERED.


Date: September 16, 2020                  /s/Kimberly A. Jolson
                                            KIMBERLY A. JOLSON
                                            UNITED STATES MAGISTRATE JUDGE