IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN EWALT,** *et al.*, | : | |
| | : | **Case No. 2:19-cv-4262** |
| **Plaintiffs,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Kimberly A. Jolson** |
| **GATEHOUSE MEDIA OHIO** | : | |
| **HOLDINGS II, INC., d/b/a THE** | : | |
| **COLUMBUS DISPATCH,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

**I.   INTRODUCTION**

This matter comes before the Court on the following motions: (1) Defendant Copley Ohio's Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Failure to State a Claim, (ECF No. 65); (2) the Holding Company Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, (ECF No. 66); (3) Defendant GateHouse Ohio's Motion to Dismiss for Failure to State a Claim, which, in turn, generated Plaintiffs' Motion to Disregard Matters Outside the Pleadings, and Defendant GateHouse Ohio's Motion to Strike (ECF Nos. 48, 53, 57).

For the reasons that follow, this Court holds: (1) Defendant Copley Ohio's Motion to Dismiss is **GRANTED** for Lack of Subject-Matter Jurisdiction, (ECF No. 65); (2) the Holding Company Defendants' Motion to Dismiss is **GRANTED** for Lack of Personal Jurisdiction, (ECF No. 66); (3) Plaintiffs' Motion to Disregard is **GRANTED**, (ECF No. 53); (4) Defendant GateHouse Ohio's Motion to Strike is **GRANTED**, but only insofar as it is construed as a Motion to Disregard, (ECF No. 57); and (5) Defendant GateHouse Ohio's Motion to Dismiss for Failure to State a Claim **GRANTED IN PART** and **DENIED IN PART**, (ECF No. 48).

## II. BACKGROUND

This case is about newspaper subscriptions. Plaintiffs Steve Wylie, John Ewalt, and Bonnie Navarre on behalf of themselves and others similarly situated filed suit against three Defendants: (1) GateHouse Media Ohio Holding II. Inc., d/b/a *The Columbus Dispatch* ("GateHouse Ohio"); (2) Copley Ohio Newspapers, Inc., ("Copley Ohio"); and (3) GateHouse Media, LLC, ("GateHouse Media") and Gannett Co., Inc. ("Gannett") ("the Holding Company Defendants").[1]

Defendant GateHouse Ohio owns and operates *The Columbus Dispatch* ("*The Dispatch*"). Each Plaintiff subscribes to *The Dispatch*. (ECF No. 42 ¶¶ 128, 131, 134). Like most periodicals, *The Dispatch* offers subscriptions of varying lengths, e.g., 13 weeks, 26 weeks, 52 weeks. (*Id.* ¶ 4). This, according to Plaintiffs, is where the trouble arises. Plaintiffs lodge against Defendants a "deceptive" scheme to deprive customers of their reasonable expectations. (*Id.* ¶ 4). A reasonable customer would expect that Defendant GateHouse Ohio would provide *The Dispatch* for the number of weeks stated in the Subscription Agreements. Instead, Plaintiffs allege that GateHouse Ohio reduces its customers' fixed-length subscriptions by sending unsolicited and unwanted "premium editions." (*Id.* ¶ 25). Each issuance of a premium edition shortens the overall subscription length. (*Id.* ¶ 6). Examples of such premium editions include a cookbook, calendar, health guide, pet magazine, and puzzle book.[2] (*Id.* ¶ 9–10). Defendant GateHouse Ohio argues that multiple contracts, including the Terms of Sale posted online, disclose the impact these premium editions have subscription length.[3] (*See generally* ECF No. 48). But Plaintiffs state that these Terms are buried in the Subscription Agreements and, worse still, subject to unilateral

---

[1] The Amended Complaint refers to each of these three categories of Defendants collectively, under the umbrella "GateHouse Defendants." The Court does not use this nomenclature anywhere in this Opinion & Order.

[2] No insignificant part of the Amended Complaint objects to the *content* of the premium editions, which are not even peripherally news related. (*Id.* ¶ 19).

[3] This Court understands that the universe of operative contracts between Plaintiffs and Defendant GateHouse Ohio include the Subscription Agreements, Terms of Sale, invoices, and renewal notices. GateHouse Ohio the authority to modify the subscription length through the issuance of premium editions. (*Id.* ¶ 73).

modification. (ECF No. 42 ¶ 7). Thus, a customer who purchases a 52-week subscription might receive *The Dispatch* for 30 weeks—or even less, depending on the number of premium editions issued. (*Id.* ¶ 14).

More concerning, GateHouse Ohio does not bill separately for these premium editions. (*Id.* ¶ 16). Upon automatic renewal, a customer might not even notice that those subscriptions have been shortened through the issuance of premium editions. (*Id.* ¶ 15). Apparently, customers cannot easily receive copies of their invoices online. (*Id.* ¶ 17). When a customer receives a paper invoice, GateHouse Ohio assesses a $9.00 fee, which shortens the subscription length even further. (*Id.*). If Defendant wanted to provide premium content reasonably and transparently, it would have provided customers with the option not to receive the premium editions at all; or, at the very least, the impact of the premium editions on the length of the subscriptions should have been disclosed clearly, with separate billing and advance notice of the exact number, cost, and type of the premium editions. (*Id.* ¶ 32).

Defendant GateHouse Ohio moves for dismissal, strongly contending that the foregoing is rife with factual inaccuracies, and questioning why Plaintiffs do not avail themselves of an immediate remedy: cancel their subscriptions. (ECF No. 48).

Plaintiffs also contend that this misconduct is not isolated to GateHouse Ohio. Additional Defendants in this suit are Defendants Copley Ohio and the Holding Company Defendants. (ECF No. 42). Copley Ohio owns the *Akron Beacon Journal* ("*Akron Beacon*"). None of the three Plaintiffs subscribe to the *Akron Beacon* but bring this putative class action on behalf of subscribers who may have been wronged in a similar manner. The Holding Company Defendants are Gannett and GateHouse Media, two non-Ohio entities. Defendant Gannett is the holding company of multiple newspaper distributors, including Defendant GateHouse Ohio (d/b/a *The Columbus*

*Dispatch*), Defendant GateHouse Media, and Defendant Copley Ohio (d/b/a *The Akron Beacon Journal*). Gannett is a publicly traded Delaware company headquartered in Virginia. (ECF No. 66 at 14). Defendant GateHouse Media is also a holding company formed to facilitate the acquisition of newspapers. It is a Delaware LLC with its principal place of business in New York. (*Id.* at 15).

On April 17, 2020, Plaintiffs Wylie, Bonnie Navarre, and John Ewalt filed their Amended Complaint against Defendants GateHouse Ohio, Copley Newspapers, and the Holding Company Defendants. (ECF No. 42). Alleging individual and class claims, the Amended Complaint sets forth nine counts against Defendants: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith; (3) violations of the Ohio Consumer Sales Practices Act ("OCSPA"); (4) declaratory judgment on the OCSPA allegations; (5) violations of the Ohio Deceptive Trade Practices Act ("ODTPA"); (6) a declaration that certain portions of the Terms of Sale are unconscionable; (7) a declaration that the Terms of Sale are illusory agreements; (8) unjust enrichment; and (9) injunctive relief. (ECF No. 42)

All Defendants moved to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). (ECF Nos. 48, 65, 66). Defendant Copley Ohio moves for want of subject-matter jurisdiction pursuant to Rule 12(b)(1). (ECF Nos. 65). The Holding Company Defendants challenges the existence of personal jurisdiction, pursuant to Rule 12(b)(2). In moving to dismiss for failure to state a claim, Defendant GateHouse Ohio further moves to strike exhibits and portions of Plaintiffs' Memorandum in Opposition to the Motion to Dismiss. (ECF No. 57). Plaintiffs also argue that some of Defendant GateHouse Ohio's exhibits and affidavits were submitted outside the pleadings and must be disregarded. (ECF No. 63).

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) provides for the dismissal of a complaint for, among other things, lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (2), and (6).

### A.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Where a defendant challenges the existence of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction to avoid dismissal. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack is a challenge to the sufficiency of a complaint, and, when considering the motion, the court must view the material allegations of that complaint as true and construe them in the light most favorable to the nonmoving party. *Id.* A factual attack is a challenge to the factual existence of subject matter jurisdiction. *Id.* No presumptive truthfulness applies to the factual allegations. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). The district court is free to weigh the evidence to assure itself of its ability to hear the suit. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).

### B.   Motion to Dismiss for Lack of Personal Jurisdiction

Similar to its 12(b)(1) counterpart, Rule 12(b)(2) allows a defendant to challenge the Court's jurisdiction over the person. When such a motion is filed, "[t]he party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). In the face of a supported motion to dismiss, the plaintiff may not

rest on his pleadings but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 930 (6th Cir. 1974)). When courts consider a motion to dismiss pursuant to 12(b)(2) without an evidentiary hearing, the plaintiff "need only make a *prima facie* showing of jurisdiction." *Bird*, 289 F.3d at 871 (internal citation omitted). The plaintiff can make this prima facie showing by "'establishing with reasonable particularity sufficient contacts between [the Defendants] and the forum state to support jurisdiction.'" *Neogen Corp.,* 282 F.3d at 887 (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987)).

## C.    Motion to Dismiss for Failure to State a Claim

Under 12(b)(6), a complaint will survive a motion to dismiss only if it contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Claims that sound in fraud—even if not denominated as such—must be pled with particularity pursuant to Rule 9(b) *Culy Const. & Excavating, Inc. v. Laney Directional Drilling Co.*, No. 2:12-cv-4, 2012 WL 2071804, at \*7 (S.D. Ohio June 8, 2012).

### 1. Collective Allegations

"On a motion to dismiss a putative class action complaint, courts may only consider the allegations of the named plaintiffs, and not the generalized allegations of unnamed plaintiffs or

putative class members." *Tatum v. Chrysler Grp. LLC*, No. 10-cv-4269, 2012 WL 6026868, at *4 (D.N.J. Dec. 3, 2012). In addition, when a class-action complaint asserts claims against multiple defendants, "a named plaintiff must have a valid cause of action against each defendant, and cannot rely on the allegations of putative class members if he or she does not also have a claim against that defendant." *Crissen v. Gupta*, 994 F. Supp. 2d 937, 946 (S.D. Ind. 2014).

### 2. Matters Outside the Pleadings

"When ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts generally may not consider matters outside the pleadings." *Norris v. Glassdoor, Inc.*, No. 2:17-CV-00791, 2018 WL 3417111, at *2 (S.D. Ohio July 13, 2018); *Beckner v. Ohio Cent. Sys.*, No. 2:01-CV-873, 2002 WL 31409431, at *2 (S.D. Ohio Aug. 19, 2002) (observing that an affidavit "directly contradict[ing] an allegation contained in Plaintiffs' complaint" is outside the pleadings). A defendant cannot rely on a document outside the pleadings when the authenticity, validity, accuracy, or completeness of the document is in dispute. *See Bailey v. Hartford & Accident Ins. Co.*, No. 5:15cv406, 2016 WL 760431, *3 (N.D. Ohio Feb. 26, 2016).

But a defendant may submit a document that was not attached to the plaintiff's complaint where the document is referred to in the complaint and central to the plaintiff's claims. Where extrinsic materials "add nothing new, but, in effect, reiterate the contents of the complaint itself," they may be considered without converting a motion to dismiss to a motion for summary judgment. *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

### 3. Motion to Strike

Courts, upon motion or on its own, "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are entrusted to the "sound discretion of the trial court, but are generally

disfavored." *Yates-Mattingly v. University of Cincinnati*, No. 1:11–cv–753, 2013 WL 526427, at *1 (S.D. Ohio Feb. 11, 2013). Indeed, "[s]triking pleadings is considered a drastic remedy to be used sparingly and only when the purposes of justice so require." *Id.* (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) ). On the other hand, "motions to strike 'serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case.' " *Id.* (internal quotations omitted).

## IV.   LAW & ANALYSIS

All Defendants move to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). (ECF Nos. 48, 65, 66). This Court's analysis is as follows. First, it addresses the threshold questions of jurisdiction, i.e., Defendant Copley Ohio's Motion to Dismiss for Lack of Subject-Matter Jurisdiction, pursuant to Rule 12(b)(1), followed by an assessment of the Holding Company Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Rule 12(b)(2). (ECF Nos. 65, 66). Then, it reviews Plaintiffs' Motion to Disregard or Strike matters submitted outside of the pleadings. (ECF No. 63). Next, it assesses Defendant GateHouse Ohio' Motion to Strike. (ECF No. 57). Finally, this Court reviews Defendant GateHouse's Ohio Motion to Dismiss for Failure to State a Claim. (ECF No. 48).

### A.   Subject-Matter Jurisdiction

The owner of *The Akron Beacon Journal*, Defendant Copley Ohio, moves to dismiss the Amended  Complaint for lack of standing, contending that none of the three named Plaintiffs has suffered any injury that is fairly traceable to Copley Ohio. (ECF No. 65 at 1). *See Buchholz v. Meyer Njus Tanick*, PA, 946 F.3d 855, 861 (6th Cir. 2020) (reciting the familiar three standing elements). A motion to dismiss for lack of standing is "properly considered an attack on the court's

subject-matter jurisdiction under Rule 12(b)(1)." *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 410-11 (6th Cir. 2013). Plaintiffs concede that none of them subscribes to *The Akron Beacon*. Nevertheless, Plaintiffs argue that they enjoy standing to sue Defendant Copley Ohio under both the "juridical-link" and "concerted scheme" exceptions. (ECF No. 81). These exceptions deviate from the general rule that a plaintiff "cannot represent those [class members] having causes of action against other defendants against whom [that] plaintiff has no cause of action and from whose hands [she] suffered no injury." *Thompson v. Bd. of Educ. of Romeo Cmty. Sch.*, 709 F.2d 1200, 1204 (6th Cir. 1983). First described in *La Mar v. H & B Novelty & Loan*., Co 489 F.2d 461 (9th Cir. 1973) and expounded by the Sixth Circuit in *Thompson v. Bd. of Educ. of Romeo Cmty. Sch.*, these exceptions answer the question of whether multiple defendants are linked sufficiently such that a plaintiff with a cause of action against just one defendant can also sue the other defendant.

The "sparingly applied" juridical-link exception applies where the named plaintiffs in a putative class action have no relationship with one (or more) of the named defendants, but all of the defendants are bound by some legal relationship—whether by contract or policy—such that a single resolution of the dispute would be expeditious. *Buetow v. A.L.S. Enterprises, Inc*., 564 F. Supp. 2d 1038, 1045 (D. Minn. 2008) (citing *La Mar*, 489 F.2d at 466). A juridical relationship is "most often found" in instances "[w]here all members of the defendant class are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, or a common rule or practice of state-wide application, which is alleged to be unconstitutional." *Id.* (quoting *Mudd v. Busse*, 68 F.R.D. 522, 527–528 (N.D. Ind. 1975)). The concerted-scheme exception is more self-explanatory; it applies where all injuries result from a conspiracy among the defendants. *Id.*

Here, Plaintiffs allege that subscribers to both *The Dispatch* and *The Akron Beacon* are subjected to the same premium-edition and paper-statement fee practices; and a concerted scheme or juridical relationship is apparent since the newspapers use the same Terms of Sale to justify those premium-edition practices. (ECF No. 81 at 4). Because subscribers to both newspapers suffer the same injury, Plaintiffs argue that their claims against Copley Ohio fit comfortably into both the juridical-link and concerted-scheme exceptions. But this argument strains the Court's credulity. None of the three Named Plaintiffs subscribes to the *Akron Beacon Journal*. As a result, it is unclear how an injury would be fairly traceable to a party with whom Plaintiffs are not engaged economically. *Perry v. Allstate Indemnity Co.*, 953 F.3d 417, 420 n.2 (6th Cir. 2020) (rejecting an attempt to apply the juridical-link exception to corporate affiliates).

Most importantly, no uniform policy binding Copley to the other Defendants is alleged adequately. True, Plaintiffs state that the two newspapers' Terms of Sale are identical. This is where the similarities end. Other contractual documentation upon which Plaintiffs make their case against Defendant GateHouse Ohio (e.g., invoices, renewal notices, and Subscription Agreements) are not used by Copley Ohio. Plaintiffs also have not alleged any uniformity in the number, type, and amount charged in the issuance of the two newspapers' premium editions. And in an age where copy-and-paste reigns supreme, similar or identical contractual language is not indicative of some larger scheme or contractual relationship among other unrelated defendants. Plaintiffs lack standing to assert claims against Defendant Copley Ohio because they have not alleged a particularized, traceable injury. Accordingly, this Court lacks subject-matter jurisdiction to hear these claims. All claims against Copley Ohio are **DISMISSED**. Defendant Copley Ohio Newspapers' Motion to Dismiss for Lack of Standing is **GRANTED**, and the remaining claims, filed pursuant to 12(b)(6), are **DISMISSED AS MOOT**. (ECF No. 65).

10

## B. Personal Jurisdiction

Defendants Gannett Co., Inc. ("Gannett") and GateHouse Media LLC ("GateHouse Media") are holding companies. (ECF No. 66). The Holding Company Defendants seek dismissal, contending that the Amended Complaint fails to allege adequately personal jurisdiction exists under Ohio's long-arm statute or that it would comport with due process. Plaintiffs oppose dismissal. (ECF No. 83). The general principles governing a ruling on a motion to dismiss for lack of personal jurisdiction are well-known. When courts rule on a motion to dismiss pursuant to 12(b)(2) without an evidentiary hearing, the plaintiff "need only make a prima-facie showing." *Bird*, 289 F.3d at 871. This prima-facie is shown by "establishing with reasonable particularity sufficient contacts between [the Defendants] and the forum state to support jurisdiction." *Neogen Corp.*, 282 F.3d at 887 (quoting another source). Further, an exercise of personal jurisdiction over a non-resident defendant is valid only if it meets the requirements of both the state's long-arm statute and constitutional due process. *Gerber v. Riordan,* 649 F.3d 514, 517 (6th Cir. 2011).

Before this Court discusses these potential bases of personal jurisdiction, it detours for a discussion of the alter-ego theory upon which Plaintiffs' long-arm and due-process arguments are premised. *Carrier Corp. v. Outokumpu Oyj*, 673 F. 3d 430, 450-51 (6th Cir. 2012) (explaining a corporation's relationship with an affiliated subsidiary entity in the forum state is relevant to the personal jurisdiction and due-process questions). An out-of-state parent exerting a large degree of control over its in-state subsidiary's corporate activities risks being hauled into the forum state. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, n.3 (9th Cir. 2000) ("Although jurisdiction over a subsidiary does not automatically provide jurisdiction over a parent . . . where the parent totally

11

controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent, jurisdiction is appropriate over the parent as well."). This is a question of degree.

Here, Plaintiffs oppose dismissal, arguing that the Holding Company Defendants are nothing more than an alter-ego affiliate of the GateHouse Ohio, such that the Holding Company Defendants are deemed "present" in Ohio for purposes of jurisdiction. Plaintiffs allege that the Holding Company Defendants (or, in their words, the Publisher Defendants) are responsible for causing tens of millions of dollars in damages to tens of thousands of Ohioans through intentional misconduct. (ECF Nos. 83, 103 at 8). The core of this argument is that personal-jurisdiction exists over the Holding Company Defendants because the holding companies control and oversee GateHouse Ohio's premium-edition and paper-statement-fee practices. (ECF No. 83 at 6).

Recall that the Holding Company Defendants are comprised of two corporations: Gannett and GateHouse Media. Gannett is a publicly traded Delaware corporation with its principal place of business in Virginia. Its subsidiaries are newspaper distributors and include GateHouse Ohio, Copley Ohio, and GateHouse Media. (ECF No. 66 at 14). GateHouse Media, the intermediate holding company of Gatehouse Ohio, is a Delaware corporation with its principal place of business in New York. (*Id.* at 15). GateHouse Media enters into agreements for which its subsidiaries are third-party beneficiaries. (*Id.* at 16).

For the following reasons, this Court finds that the Holding Company Defendants' corporate identity is distinct from Defendant GateHouse Ohio.

Plaintiffs argue that the Holding Company Defendants are active, rather than passive, corporate parents. As for proof, they point to *Third Nat. Bank in Nashville v. WEDGE Grp. Inc.*, 882 F.2d 1087 (6th Cir. 1989). There, the Sixth Circuit reversed a district-court finding that a

foreign company was not subject to personal jurisdiction under the state's long-arm statute.[4] Critical to the appellate holding was that the parent company was an *active* owner of the subsidiary. The parent company owned 100% of the subsidiary; its company officers visited the in-state subsidiary as often as monthly to review the subsidiary's operations, the parent and subsidiary shared income tax liability; the parent's corporate officers served as the subsidiary's board of directors. *Id. In re Teletronics Pacing Systems, Inc.*, 953 F. Supp. 909 (S.D. Ohio 1997) is also instructive. That court found personal jurisdiction existed where the out-of-state parent "exercised a great deal of control over the [subsidiaries]."

Plaintiffs argue that the Holding Company Defendants are "active" parent companies in a similar manner. Specifically, they state that the Holding Company Defendants "micromanage" GateHouse Ohio; and the Holding Companies use collective pronouns such as "we," "us, and "our" in governmental filings in reference to their subsidiaries.

But this Court is unconvinced that personal jurisdiction exists over the Holding Company Defendants, absent stronger evidence that the parent company was not a mere passive owner. *See, e.g.*, *Carrier Corp.*, 673 F.3d at 450–51. Corporate ownership and corporate nomenclature are alone insufficient for the exercise of personal jurisdiction. More is needed. Plaintiffs have not proffered the existence of intimate, day-to-day oversight by the Holding Company Defendants over GateHouse Ohio. Nor have they pointed to "deep and wide-ranging . . . undue control of the [subsidiaries] by the [parent companies]." *In re Teletronics Pacing Systems, Inc.*, 953 F. Supp. 909 (S.D. Ohio 1997). There is no pervasive control, interlocking directorate or commonality of officers. Thus, this Court finds no personal jurisdiction over the Holding Company Defendants exists by virtue of the alter-ego theory. Outside of the alter-ego theory, Plaintiffs still have not

---

[4] This Court points out that Ohio's long-arm statute, unlike Tennessee's which the *Third Nat'l Bank* Court reviewed, is *not* coterminous with the Due Process Clause. This case is thus not fully analogous to this context.

established that personal jurisdiction exists under Ohio's long-arm statute or that to exercise it herein would comport with due-process considerations.

### 1. Ohio's Long-Arm Statute

Plaintiffs' Amended Complaint alleges that jurisdiction exists under two prongs of Ohio's long-arm statute: R.C. 2703.382(A)(1) (transacting business in Ohio) and (A)(2) (contracting to supply goods or services with Ohio). In its opposition to the Holding Companies' Motion to Dismiss, Plaintiffs add additional sections of the state's long-arm statute: (A)(4) and (A)(6), both of which grant personal jurisdiction over a person arising from tortious injury. (ECF No. 83 at 9).

### a. Sections (A)(1), Transacting Business, and (A)(2), Contracting to Supply Services or Goods

Section (A)(1) confers jurisdiction over a non-resident defendant if the foreign company was "transacting" business in Ohio. Solicitation of business by an out-of-state corporation is an important factor in this analysis, particularly where the contacts between the out-of-state resident and in-state persons or entities are "substantial." *See U.S. Sprint,* 624 N.E.2d at 1052 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). Section (A)(2) confers jurisdiction over a non-resident defendant "contracting to supply services or goods" in Ohio. There must be a "necessary nexus" between Defendants' business dealings in Ohio and the matters at issue in this case. *ALTA Analytics, Inc*, 75 F. Supp. 2d at 779. Personal jurisdiction will be conferred under (A)(1) and (A)(2) only if the defendant's conduct in Ohio is the proximate cause of the cause of action; or, in other words, if the cause of action arises out of the business the defendant is transacting in Ohio.  *Brunner v. Hampson*, 441 F.3d 457, 465–466 (6th Cir. 2006)).[5]

In the instant case, the argument for extending personal jurisdiction over the Holding Company Defendants falters at the start. Plaintiffs have not alleged that the non-resident defendant

---

[5] Sections (A)(1) and (A)(2) are reviewed together.  *Busch v. Serv. Plastics, Inc.,* 11 Ohio Misc. 131, 261 F. Supp. 136, 140 (N.D. Ohio 1966) (rejecting jurisdictional assertions under (A)(1) and (A)(2) together).

initiated or solicited business in Ohio, such as if the non-resident defendant reached out to an in-state party to create a business relationship. *Dayton Superior Corp. v. Van,* 288 F.R.D. 151, 161 (S.D. Ohio 2012). Even if the Holding Company Defendants "transacted" business in Ohio upon their acquisition of *The Dispatch*, personal jurisdiction under both (A)(1) and (A)(2), will only be extended if "defendant's conduct in Ohio . . . is the 'proximate cause' of the cause of action." *United States ex rel. South Shore Elec., Inc. v. P & E Constr. LLC*, Case No. 3:17-cv-2027, 2019 WL 1205447, *3, 2019 U.S. Dist. LEXIS 41671, *7 (N.D. Ohio W.D. March 14, 2019) (citing *Brunner v. Hampson*, 441 F.3d 457, 465-466 (6th Cir. 2006)). There is no evidence that the out-of-state Holding Company Defendants acted in a deliberate, deceitful manner to cause harm to Ohio newspaper subscribers, as the Amended Complaint alleges. The existence of the complained-of business practices—i.e., premium-edition policy and paper-fee statements—exists separate and apart from GateHouse Ohio's relationship with its corporate parents.

### b. Sections (A)(4) and (A)(6), Tortious Injury

Subsections (A)(4) and (A)(6) are joined appropriately for analysis, as both require the defendant to cause tortious injury in Ohio by an act or omission taken *outside* of Ohio. Plaintiffs allege that all Defendants have injured thousands of Ohio residents through violations of the Ohio Consumer Sales Practices Act ("OCSPA") and the Ohio Deceptive Trade Practices Act ("ODTPA"). (*See, e.g.*, ECF No. 42 at ¶ 47). For both (A)(4) and (A)(6), the locus of the tort is important. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020) (citing *Jackson v. State St. Bank & Tr. Co.*, 110 Ohio App.3d 388, 674 N.E.2d 706, 710 (1996) ("A determination of long-arm jurisdiction under [§] 2307.382(A)(4) first entails a finding that the tortious injury occurred in Ohio.")).

Here, Plaintiffs purport to satisfy (A)(4) by pleading that the Holding Company Defendants derive substantial revenue from Ohio residents, alleging that the Holding Company Defendants alleged unlawful practices led "to millions of dollars in short-term profits that can be paid as dividends to shareholders and as management fees to Fortress." (*Id.* at ¶ 61). But they have not established how much revenue the Holding Company Defendants earn from Ohio consumers or the regularity with which the Holding Company Defendants engage in in-state business. Plaintiffs have not met their burden to show that the Holding Company Defendants is subject to personal jurisdiction pursuant to (A)(4) of Ohio's long-arm statute, especially given that the alleged profitability of a subsidiary is insufficient to establish jurisdiction over the parent. *Cf. International Paper Co. v. Goldschmidt*, 872 F. Supp. 2d 624 (S.D. Ohio 2012); *Cox v. Koninklijke Philips, N.V.*, 647 F. App'x 625, 629 (6th Cir. 2016).

With regard to (A)(6) specifically, Plaintiffs allege that the Holding Company Defendants knew that they would be causing injury in Ohio by deceiving newspaper subscribers. Plaintiffs have accused the Holding Company Defendants of fraud—making deceiving misrepresentations with the knowledge that the misrepresentations were false and with the intention that Plaintiffs should reply on those misrepresentations to their detriment. The Holding Company Defendants identify *The Dispatch* as one of "our major publications." (ECF No. 83 at 14). But these allegations touch on corporate nomenclature, but not tortious conduct.

Plaintiffs have failed to meet their burden to produce evidence that the Holding Company Defendants sought to deceive subscribers to the newspapers at issue. Neither (A)(1), (A)(2), (A)(4), or (A)(6) of Ohio's long-arm statute provides a basis of personal jurisdiction over the Holding Company Defendants.

*2. Due Process*

Where a plaintiff cannot show jurisdiction under the Ohio long-arm statute, a due process analysis is unnecessary. *Franklin Publ'ns, Inc. v. General Nutrition Corp.*, No. 2:05-cv-1061, 2007 U.S. Dist. LEXIS 63001, at *20, 2007 WL 2462665 (S.D. Ohio Aug. 27, 2007) (declining to analyze whether personal jurisdiction comports with due process when the Ohio long-arm statute is not satisfied). Even if Plaintiffs could establish jurisdiction under the Ohio long-arm statute, jurisdiction would have to comport with due process. *Conn*, 667 F.3d at 711 (citing *CompuServe*, 89 F.3d at 1262); *see also Fraley v. Estate of Oeding*, 138 Ohio St. 3d 250, 257 (2014). To comport with due process in a diversity case, the defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

The Sixth Circuit has established a three-part test to determine whether personal jurisdiction under Ohio's long-arm statute satisfies the due process requirements. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 430 (6th Cir. 2006). First, the defendant must purposely avail himself of the privilege of acting in Ohio or causing a consequence in Ohio. Second, the cause of action must arise from the defendant's activities in Ohio. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with Ohio to make the exercise of jurisdiction over the defendant reasonable.

Here, the Court finds that the exercise of personal jurisdiction over the Holding Company Defendants would not comport with the Due Process Clause because: (1) purposeful availment has not been shown since the mere existence of a contract between the defendant, and an Ohio citizen is not enough to haul the parent company into court, particularly absent more regular in-forum

17

contacts; (2) the cause of action does not arise from the Holding Company Defendants' in-forum activities at all; and (3) the Holding Company Defendants lack a substantial enough connection to the forum state to make the exercise of jurisdiction reasonable.

The Court, therefore, finds that Plaintiffs did not meet their burden of demonstrating even a prima-facie showing of facts on which the Court could exercise personal jurisdiction over the Holding Company Defendants. All claims against the Holding Company Defendants are **DISMISSED**. Their Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**, and the remaining claims, filed pursuant to 12(b)(6), are **DISMISSED AS MOOT**. (ECF No. 66).

### C. Matters Outside of the Pleadings

Rules 12(b) provides that if on a motion to dismiss, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment as provided in Rule 56. But this rule, like most, is not without its exceptions. If a defendant's submission of matters outside the pleadings adds nothing new, only reiterate the contents of the complaint, and does not rebut, challenge, or contradict anything in the complaint, then conversion of the motion to dismiss to one for summary judgment is not required.

With its Motion to Dismiss, GateHouse Ohio submitted a declaration and several exhibits. (ECF No. 48). Exhibit A is the declaration of Mark Maring (the "Maring Declaration"), the company's Senior Vice President of Finance and Treasurer. (ECF No. 48-1). Mr. Maring declared that the exhibits submitted with GateHouse Ohio's Motion to Dismiss represent true and accurate copies of: (1) *The Dispatch*'s Terms of Sale (Exhibit A-1); (2) an October 19, 2019 email attaching the template for *The Dispatch*'s invoices and renewal notices (Exhibit A-2); (3) renewal notices and invoices sent to Plaintiff Ewalt (Exhibit A-3); (4) a notice letter sent to EZ Pay subscribers in2

017 (Exhibit A-4); (5) a notice sent to Plaintiff Wylie (Exhibit A-5); and (6) examples of the publisher's box that appears in the *Dispatch* each day (Exhibit A-6).

In response to certain statements Plaintiffs made in opposition to the Motion to Dismiss, (ECF No. 53), GateHouse Ohio submitted the declaration of Nikhil Hunshikatti (the "Hunshikatti Declaration") as Exhibit C to its reply brief. (ECF No. 56). Mr. Hunshikatti served as Vice President of Consumer Marketing for *The Columbus Dispatch* until June 2018. (ECF No. 6-2 at § 1). His declaration attests to the accuracy of copies of notification letters sent to *Columbus Dispatch* EZ Pay subscribers in 2015 and 2016 with his signature on them (Exhibits C-1 and C-2). (*See id.* at §§ 2-3).

Plaintiffs aver that Exhibits A, A-2, A-3, A-4, A-5, C, C-1, and C-2 cannot be considered by the Court because these exhibits are not referenced in the Amended Complaint or central to Plaintiffs' claims, were submitted to refute the accuracy and authenticity of Plaintiffs' allegations and evidence, and the declarations are improper because the declarants lacked personal knowledge and raised matters outside the pleadings. Further, since Defendant GateHouse Ohio submitted Exhibits C, C-1, and C-2 in Reply, Plaintiffs are deprived of the opportunity to address the exhibits.

This Court will disregard but not strike the objected-to exhibits and affidavits. In so holding, the Court gives great weight to Plaintiffs' contention that these exhibits and affidavits are submitted to contradict the allegations submitted in the Amended Complaint. In addition, the submission of these exhibits and affidavits are not needed for this Court to review the adequacy of Defendant's Motion to Dismiss. *Lombard v. MCI Telcoms. Corp.,* 13 F. Supp. 2d 621, 625 (N.D.Ohio 1998) (denying motion to strike but excluding from consideration "those portions of the exhibits that are hearsay, not based on personal knowledge, irrelevant, or otherwise

inadmissible."). Thus, Plaintiffs' Motion to Disregard is **GRANTED**, and the Court will not consider this evidence in its analysis of the 12(b)(6) motion.

### D.   Motion to Strike

Similarly, Defendant GateHouse Ohio moves to strike Exhibit A through F of Plaintiffs' Memorandum in Opposition to GateHouse Ohio's Motion to Dismiss. (ECF No. 53). These Exhibits were not attached to Plaintiffs' Amended Complaint and do not bear on whether plaintiffs have sufficiently stated a claim. Thus, this Court will also disregard (but not strike) the Exhibits attached to Plaintiff's Opposition. Defendant's Motion to Strike is **GRANTED** but only insofar as it is construed as a motion to disregard.

### E.   Failure to State a Claim

To survive a motion to dismiss for failure to state a claim, the complaint must contain sufficient factual allegations to show that at least one named plaintiff can state a claim against each defendant that is "plausible on its face." *Twombly*, 550 U.S. at 570. Here, Plaintiffs set forth nine allegations. (ECF No. 42). Defendant GateHouse Ohio moves to dismiss them all. (ECF No. 48). This Court reviews the sufficiency of these allegations below.

#### 1. Count One: Breach of Contract

Defendant GateHouse Ohio moves to dismiss Count One of the Amended Complaint, which alleges breach of contract. "Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages or loss to the plaintiffs as a result of the breach." *Asset Management One LLC v. U.S. Bank Nat'l Ass'n*, 569 F. App'x 438, 441 (6th Cir. 2014) (quoting V*&M Star Steel v. Centimark*

*Corp.*, 678 F.3d 459, 465 (6th Cir. 2012)). All four elements are required, but the third prong is of particular dispute in this case.[6]

Plaintiffs' breach-of-contract count emerges primarily from the following documents: The Subscription Agreements, the Terms of Sale, the invoices, and renewal notices. In turn, Plaintiffs posit a three-part argument that Defendants failed to provide *The Dispatch* for an agreed-upon period of time at an agreed-upon price. Specifically, Plaintiffs argue: (1) the Subscription Agreements do not incorporate the Terms of Sale; (2) even if Subscription Agreements do incorporate the Terms of Sale, Defendants still breached the Subscription Agreements by failing to deliver the agreed-upon "product" since the delivered publications do not meet the ordinary definition of the word "premium"; and (3) the Subscription Agreement prohibits shortened subscription through issuance of paper-statement fee charges. Defendant GateHouse Ohio seeks dismissal of the breach-of-contract claim as contrary to the Terms of Sale that govern the parties' relationship. Each argument is reviewed in turn below.

### a.  *Incorporation by Reference*

In Ohio, separate agreements can be incorporated by reference into a contract. *See, e.g.*, *Volovetz v. Tremco Barrier Solutions*, 74 N.E.3d 743, 751-52 (Ohio Ct. App. 2016); *Mohmed v. Certified Oil Corp.*, 37 N.E.3d 814, 821–22 (Ohio Ct. App. 2015). To incorporate a document, the contract "must explicitly, or at least precisely, identify the written material [being] incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced

---

[6] In entertaining a Rule 12(b)(6) motion, courts may consider documents that are referred to in the pleadings and are integral to the claims without converting the motion to one for summary judgment. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). Thus, here, there is no doubt that *The Dispatch* Terms of Service and the Subscription Agreements are integral to Plaintiffs' Amended Complaint. Accordingly, while a copy of these contracts were not appended to Plaintiffs' complaint, this Court can review the Terms of Service and Subscription Agreements because they form the basis for all of Plaintiffs' claims. *See Bailey v. Hartford Life & Accident Ins. Co.*, No. 5:15-CV-406, 2016 WL 760431, at *3 (N.D. Ohio Feb. 26, 2016).

material into the contract." *Volovetz*, 74 N.E.3d at 751–52. Further, when terms and conditions located on a website are expressly incorporated by reference in a purchase order, courts generally hold that those terms and conditions become a part of the agreement between the parties. *Newpage Corp. v. Mayfield Creek Forestry Consultants, LLC*, No. 3:14-CV-386, 2014 WL 7366201, at *3 (S.D. Ohio Dec. 24, 2014).

Here, Plaintiffs' central argument opposing dismissal of the breach-of-contract claim is that the Terms of Sale are not incorporated into the Subscription Agreements because: (1) the Terms are only posted online, undergo revision regularly without notice to subscribers, and are illusory and unconscionable; and (2) incorporation of the Terms would result in hardship and surprise. (ECF No. 42 at 30).[7] Defendant GateHouse Ohio disagrees, retorting that the Terms are incorporated by reference into the Subscription Agreement; and when terms and conditions on a website are incorporated by reference, they become a part of the parties' agreements.

Resolution of this question is important because the Terms of Sale disclose the impact of the premium edition on the length of the subscription term. In other words, if Plaintiffs are correct that the Terms of Sale are *not* incorporated into the Subscription Agreements, then it follows—at least normatively—that Defendant GateHouse Ohio might not be entitled to reduce the length of the Subscription Agreements through the issuance of premium editions.

Undergirding Plaintiffs' argument is *Disc. Drug Mart, Inc. v. Devos, Ltd.*, No. 1:12 CV 00386, 2013 WL 5820044 (N.D. Ohio Oct. 29, 2013). There, the parties entered into a distribution agreement. Plaintiff sued, alleging the defendant failed to remit credits owed to it under the distribution agreement. Defendant moved to dismiss, averring that the forum-selection clause was contained in two different places: (1) online terms and conditions; and (2) the return authorization

---

[7] It is unclear the extent to which the parties argue that the invoices and renewal notices are (or are not) incorporated by reference.

form, which the plaintiff submitted each time it returned products to defendant. The Northern District of Ohio found the terms on the defendant's website were not incorporated into the distribution agreement. *Id.* at *2. The *Discount Drug Mart* court so held in part because one party retained the power to modify the contract unilaterally, which could result in surprise or hardship.

Here, Plaintiffs contend that this case falls squarely into the *Discount Drug Mart* precedent. But Defendant GateHouse Ohio argues that *Discount Drug Mart* is inapplicable because the 2016 Terms of Sale, upon which Plaintiffs rely, discuss the premium-edition policy and discloses that subscriptions would be shortened as a result. Thus, here, unlike in *Discount Drug Mart*, the Terms of Sale were actually a part of the contract at the time the parties executed the Subscription Agreements. *Id.* at *2.

This Court is persuaded, albeit narrowly, that Plaintiffs have stated a claim that the Terms of Sale contained on the website were not incorporated by reference into the Subscription Agreement. On the one hand, *Discount Drug Mart* is distinguishable factually. Plaintiffs attached the 2016 Terms of Sale to their pleadings; so, to the extent either the Subscription Agreement, invoices, or renewal between the partis referenced the online Terms of Sale, Plaintiffs "cannot escape being bound by the terms of a contract simply by failing (or refusing) to read it." *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prod., Inc.*, No. 5:15-CV-1310, 2016 WL 705261, at *5 (N.D. Ohio Feb. 23, 2016), *adhered to on reconsideration*, No. 5:15-CV-1310, 2016 WL 3555431 (N.D. Ohio June 30, 2016). (*See* ECF No. 42 ¶ 90).

This Court also expresses its skepticism on the hardship-or-surprise argument. In one incorporation-by-reference case, a court found no incorporation where "the *only* way the receiving party could have accessed the additional terms was by reading the backside of a physical document, which it never received." *Id.* (citing *Lightyear Commc'ns, Inc. v. Xtrasource, Inc.*, No. 02-cv-687,

2004 WL 594998 (W.D. Ky. Feb. 4, 2004). It is unclear that Plaintiffs would be, in fact, be surprised or that hardship would befall them upon Defendant's changes to the agreements.

But on the other hand, important considerations in an incorporation-by-reference question include whether the parties had knowledge of and assented to the incorporated terms and if the contract clearly and unequivocally referenced the location of the online terms. *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 263 (5th Cir. 2011). It is unclear whether the Subscription Agreement and invoices referred to the Terms of Sale (or vice versa). *Contra Metro Auto Sales, Inc. v. Reynolds & Reynolds Co.*, No. CIV.A. 14-6530, 2015 WL 4461747, at *6 (E.D. Pa. July 21, 2015) ("The Master Agreement 'clearly and unequivocally' incorporates the Customer Guide."). Given this lingering notice-and-knowledge question, this Court concludes that Plaintiffs have stated a claim alleging that the Terms of Sale have not been incorporated into the parties' Subscription Agreements.

### b. Definition of "product" and "premium"

Alternatively, even if the Terms of Sale are incorporated into the Subscription Agreements, Plaintiffs argue that Defendant GateHouse Ohio still breached the Subscription Agreements and Terms of Sale by failing to deliver the defined "product" for the agreed-upon term. (*Id.* ¶ 192). This is a two-part argument. First, Plaintiffs argue that the term "product" does not include premium editions and, as a result, Defendant GateHouse Ohio breached the Subscription Agreements by delivering unwanted premium editions. Second, even assuming the Terms of Sale allowed for the delivery of premium editions, Plaintiffs argue that Defendants still breached their agreements by delivering items that did not constitute "premium editions."

*i. Definition of "Product"*

The Terms of Sale define "product" to include "any paid subscription service available from The Columbus Dispatch, including home delivery of our print publication, access to our Website and our E-Edition digital replica via supported devices." (ECF No. 42 ¶ 193). Plaintiffs argue that the term "product" does not include premium editions. Based on a plain reading of the Terms' definition of "product," there is no reason to suppose that "product" cannot include premium editions based on this contractual definition. This Court **GRANTS** Defendant's Motion to Dismiss the argument that the term "product" does not include premium editions.

*ii. Definition of "Premium"*

Plaintiffs allege in the alternative, even assuming that the Terms were incorporated into the Subscription Agreements, and even assuming the definition of "product" allowed for delivery of premium editions, Defendant still breached the agreements by delivering items that did not constitute premium editions. Plaintiffs look to the plain meaning of the term. A premium edition should provide, according to Dictionary.com, newspapers of "exceptional quality" or "greater value" compared to non-premium edition—or at least have "added value." (ECF No. 42 ¶ 198).

Defendant GateHouse Ohio contends that this claim also fails. Section 1.4 of the Terms of Sale defines premium editions as publications that "provide additional information and value." (ECF No. 48 at 18). Thus, Defendants argue that the complained-of premium editions fall within this definition. And, they add, in construing a contract, courts consider "the practical construction made by their parties" as well as their "prior conduct." *Consolidated Mgt., Inc. v. Handee Marts, Inc.*, 109 Ohio App.3d 185, 191-92 (internal quotations and citations omitted). In this case, Plaintiffs Ewalt and Wylie are long-term subscribers to the *Dispatch*—each at least since 2014. So

while Plaintiffs object to Defendant's distribution of premium edition, they continued to renew and pay for these subscriptions, even while receiving the unwanted premium editions.

This Court finds that Plaintiffs have stated a claim on whether Defendant GateHouse Ohio breached the Subscription Agreements by failing to provide an edition that was truly "premium." While the Terms of Sale contain a roomy definition of "premium," Plaintiffs have at least stated a claim on whether the premium editions met the parties' agreed-upon terms. Many of the premium editions were not newspapers at all but were instead calendars, pet magazines, and cookbooks. (ECF No. 42 ¶ 201). These factual allegations raise a right to relief above the speculative level.

c.   *Paper Statement Fees*

The last part of Plaintiffs' breach-of-contract argument conjectures that the Subscription Agreements do not authorize Defendant GateHouse Ohio to shorten their customers' subscriptions through charges for paper statement fees. (*Id.* ¶ 203-204). If a subscriber does not receive his subscription online and instead receives paper invoices, Plaintiffs allege GateHouse Ohio assesses that customer $9.00 per invoice, which shortens the customer's subscription even further. Thus, Plaintiffs argue that Defendants GateHouse Ohio breached the Subscription Agreements by charging excessive paper statement fees and using those fees to reduce the agreed-upon length of subscriptions. (*Id.* ¶ 205). Defendant GateHouse Ohio contends that to the extent that Plaintiffs purport to rely on the renewal notices or notices to EZ Pay subscribers, that the breach-of-contract claim still fails because there are numerous ways that customers can manage their accounts for free, such as by calling customer service or going online.

This Court finds that Plaintiffs stated a claim on whether the paper statement fees violated the Subscription Agreement. It is not clear the extent to which the paper-statement fee policy was disclosed in the original Subscription Agreements.

Thus, construing all evidence in the light most favorable to the Plaintiffs, this Court finds that Plaintiffs have stated a valid breach-of-contract claim against Defendant GateHouse Ohio, except as it pertains to the definition of "product."

### 2. Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing

Next, Plaintiffs' Count Two asserts that even if Defendant GateHouse Ohio was entitled to issue premium editions, it was still bound by the duty to act in good faith and fair dealing in deciding when to issue those premium editions, what constituted premium editions, the amount to charged, and billing method. (ECF No. 42 at 33–34). Defendants move for dismissal, stating that the Terms allow GateHouse Ohio to issue a maximum number of premium editions per year, set a maximum amount charged, and allow customers to opt-into online billing to avoid paper-statement fees. (ECF No. 48).

Ohio law "imposes an implied duty of good faith on parties to any contract." *Wendy's Int'l Inc. v. Saverin*, 337 F. App'x 471, 476 (6th Cir. 2009). Ohio law, however, "does not create an independent cause of action for failure to perform or enforce a contract in good faith." *Padula v. Wagner*, 37 N.E.3d 799, 814 (Ohio Ct. App. 2015). "Instead, 'good faith is part of a contract claim and does not stand alone.'" *Id.* (quoting *Lakota Local Sch. Dist. Bd. of Educ. v. Brickner*, 108 Ohio App.3d 637, 671 N.E.2d 578, 584 (1996)). There is a "limited" exception where the duty arises from the language of the contract. *Capital Equity Grp. v. Ripken Sports Inc.*, 744 F. App'x 260, 264 (6th Cir. 2018) (quoting another source). Absent the exception, an allegation of the breach of the implied covenant is not an independent count, but stands together with a broader breach-of-contract claim. As an Ohio court explained:

> [T]his section means that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract . . . This distinction makes it clear that the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are

created, performed, and enforced, and does not create a separate duty of fairness
and reasonableness which can be independently breached.

*Padula v. Wagner*, 2015-Ohio-2374, ¶ 52, 37 N.E.3d 799, 814.

Here, the allegations of breach of the implied covenant are tethered to an identified
contractual duty in Count One. If there is a breach of an underlying contract, then there is a basis
to maintain the cause of action for breach of the implied covenant. *Doe v. Univ. of Dayton*, 766 F.
App'x 275, 288 (6th Cir. 2019). Plaintiffs have failed to explain how the various contracts at issue
fall within the set of limited circumstances that would allow this Court to apply the implied
covenant of good faith and fair dealing as a separate count from the breach-of-contracts claim. *Id.*
Thus, this Court finds that because it allows most of the breach-of-contract claim in Count One to
go forward, it must also allow the breach of implied covenant claim to go forward, as a *dependent*
part of Count One.[8] Plaintiffs, therefore, have stated a claim of a breach of contract based upon the
implied covenant of good faith and fair dealing.

### 3. *Count Three: Ohio Consumer Sales Practices Act*

The Ohio Consumer Sales Practices Act[9] ("OCSPA") provides that "[n]o supplier shall
commit an unfair or deceptive act or practice in connection with a consumer transaction." Ohio
Rev.Code § 1345.02(A).[10] Under the OCSPA, "unfair or deceptive consumer sales practices" are

---

[8] Alternatively, if Plaintiffs are able to demonstrate why Count Two should continue as an independent claim, they
are welcome to do that in subsequent pleadings.

[9] None of the threshold OCSPA issues—e.g., if Defendants are "suppliers"—are contested, and the Court does not
review them.

[10] Defendant GateHouse Ohio contends that dismissal of the individual portion of the OCSPA claim is appropriate as
time barred. An OCSPA claim "may not be brought more than two years after the occurrence of the violation which
is the subject of the suit." R.C. 1345.10(C). Here, the § 9 of the Terms requires any claim against *The Columbus
Dispatch* to be brought "within one year of the date you could first bring them." (ECF No. 48). Thus, Defendant argues
that because Plaintiffs allege that GateHouse purchased *The Dispatch* in 2016, and that, "[s]hortly thereafter, the
GateHouse Defendants instituted the deceptive practices that are the subject of this litigation," Plaintiffs Ewalt's and
Wylie's failure to bring claims in 2016 or, at the latest, September 2018—one year after the alleged four separate price
increases—permanently bars their claims. Plaintiffs retort that their claims are not time barred because GateHouse
cannot rely on the one-year statute of limitations in the Terms of Sale. The relevant provision is ambiguous on when
the one-year period begins and cannot be applied to OCSPA claims. Additionally, this unilaterally imposed, non-

those that mislead consumers about the nature of the product they are receiving; "unconscionable acts or practices" relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue. *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 743 (N.D. Ohio 2010) (internal citations omitted). But "[m]ere non-disclosure of a defect, without more, does not fall within the purview of deceptive or unconscionable practices prohibited by the [OCSPA]." *Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751, 754 (N.D. Ohio 2001) (quoting *Bierlein v. Bernie's Motor Sales, Inc.*, No. 9590, 1986 WL 6757, at *7 (Ohio Ct. App. June 12, 1986)).

The OCSPA is a remedial statute and should be given liberal construction in favor of consumers, so long as those statutory constructions are not unreasonable. Finally, the OCSPA permits both individual and class action claims; and in the instant case, Plaintiffs argue both. The individual claims premised upon the OCSPA are reviewed first, followed by the putative class action allegations.

### a. Individual Claims

The OCSPA pleading standard is disputed. Plaintiffs contend that the familiar Rule 8 standard applies, whereas Defendants state that OCSPA claims must be pled with particularity pursuant to Rule 9(b). *Compare Ferron v. Search Cactus, L.L.C.*, No. 2:06–cv–327, 2007 WL 1792332, at *4 (S.D. Ohio June 19, 2007) (reasoning that the implicit rationale that unfair or deceptive acts under the OCSPA need not rise to the level of fraud), *with Ferron v. SubscriberBase Holdings, Inc.*, No. 2:08–cv–760, 2009 WL 650731, at *5 n.4 (S.D. Ohio Mar. 11, 2009) ("Rule 9(b) applies in cases such as this because actions for deceptive trade practices are, at their core, fraud claims."). The Sixth Circuit has declined to reach the issue, leaving the potential application

---

mutual, one-year statute of limitations is unconscionable. Because it is unclear when the statutory period began, this Court finds that these claims are not time barred.

of Rule 9(b) in the OCSPA context unresolved for now. *Ferron v. Zoomego, Inc.*, 276 Fed. Appx. 473 (6th Cir. 2008).

Given the broad remedial purpose of the statute, this Court contemplates that only the Rule 8 standard is required. The purpose of the statute is, after all, to protect consumers from suppliers who commit deceptive or unconscionable sales practices. And, as is a remedial act, it is construed liberally in favor of the consumer. *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 29, 548 N.E.2d 933, 935; *Renner v. Derin Acquisition Corp.* (1996), 111 Ohio App.3d 326, 334, 676 N.E.2d 151, 156–157. This Court operates under the assumption that Rule 8 is the applicable standard, but notes any points of ambiguity.

Irrespective of whether Rule 8 or Rule 9(b) applies, the focus of an inquiry into whether an act is deceptive or unconscionable is the likely effect on the mind of the consumer. An act is "deceptive" if it "has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts." *Funk v. Montgomery AMC/Jeep/Renault* (1990), 66 Ohio App.3d 815, 823, 586 N.E.2d 1113, 1119. Conduct is "unconscionable," when the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier. R.C. § 1345.03(B)(5).[11]

To make out a prima facie claim under the OCSPA, the plaintiff "must 'show a material misrepresentation, deceptive act or omission' that impacted his decision to purchase the item at issue." *Temple v. Fleetwood Enters.*, 133 F. App'x 254, 265 (6th Cir. 2005); *see also Richards v. Beechmont Volvo*, 127 Ohio App.3d 188, 711 N.E.2d 1088, 1090 (1998) ("In order to be deceptive,

---

[11] The parties also dispute whether OCSPA applies at all because the provisions Plaintiffs cite relate to advertising and promotional literature. (ECF No. 56 at 40). But Defendants do not posit an explanation of "advertising" or "promotional literature," which could be taken to be quite broad or narrow. At the Motion to Dismiss stage, the Court does not find this to be a shortcoming justifying dismissal, particularly given the remedial purpose of the statue. But to the extent the parties file additional Motions, the applicable OCSPA provisions should be described with clarity.

and therefore actionable, a seller's act must not only be at *variance* with the truth but must also concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved") (emphasis added).

Guiding this Court's inquiry are the following questions: Have Plaintiffs identified the alleged misrepresentation, deceptive act, omission, or unconscionable conduct? Were the seller's representations at variance with the truth—i.e., false or one-sided in favor of the supplier? Was the misrepresentation, act, omission material, or conduct *material*—that is, did it impact the consumer's decision to purchase; or, conversely, even if untrue, was the omission or conduct merely incidental to the choices a consumer made upon entering the transaction? *Richards v. Beechmont Volvo*, 127 Ohio App. 3d 188, 191, 711 N.E.2d 1088, 1090 (1998). Would construal in favor of the Plaintiffs impose unreasonable or undue burdens on Defendant? *Frank v. WNB Group*, LLC, 2019-Ohio-1687, 135 N.E.3d 1142 (Ohio Ct. App. 1st Dist. Hamilton County 2019).

Here, Plaintiffs plead thirteen allegations under the OCSPA. (ECF No. 42 ¶ 224). Several of these claims overlap. Thus, in an effort to maximize clarity, this Court discerns *five* categories into which these thirteen[12] allegations fall, which this Court will refer to as Categories A-E.

---

[12] The relevant paragraph reads as follows:

> Pursuant to R.C. § 2721.01 et seq., R.C. § 1345.09(D), and Federal Rule of Civil Procedure 57, Plaintiffs, the Premium Edition Subclass, and the Statement Fee Subclass request a declaration that the GateHouse Defendants engaged in unfair, deceptive, and unconscionable conduct in violation of the CSPA by, among other things, (1) advertising term subscriptions without a bona fide, good faith intention of providing the subscription for the term advertised; (2) failing to clearly and conspicuously disclose material limitations relating to premium editions when making term subscription offers; (3) failing to have customers acknowledge or agree to the Terms of Sale (e.g., by checking a box that indicates assent to the Terms of Sale); (4) failing to disclose, in advance of issuing the premium editions, the type, specific price, and number of premium editions GateHouse Ohio and Copley Ohio intended to issue; (5) failing to inform customers that they can opt out of receiving premium editions; (6) requiring customers to enter into one-sided agreements that purported to permit GateHouse Ohio and Copley Ohio to unilaterally alter the parties' agreement; (7) continuously changing their Terms of Sale; (8) abusing their power to specify terms of the subscription agreements by steadily increasing the frequency of and charges for premium editions; (9) issuing cookbooks, puzzle books, etc. as "premium" editions when these items are unrelated to the distribution of news; (10) requiring customers to enter into agreements that purport to limit the customers' recovery to a de minimis amount; (11) requiring customers to enter into agreements that purport to unreasonably limit the timeframe for a customer to file suit; (11) failing to properly disclose their paper statement fees; (12) charging customers

31

Category A consists of allegations Three and Seven, which discuss the Terms of Sale. Category B consists of allegations Six and Ten, which center on limitations on liability, limitations on the time for filing suit, and provisions allowing a party to modify a contract. Category C consists of allegations Eleven, Twelve, and Thirteen, which examine paper-statement fees and charging methods. Category D consists of allegations One and Two, which discuss the advertising of term. Category E consists of allegations Four, Five, Eight, and Nine deal with premium editions.

This Court finds that Plaintiffs have failed to state a claim on some, but not all, of the OCSPA allegations. Falling short of even the Rule 8 standard are allegations contained in Categories A, B, and C. Conversely, Categories D and E are pled with requisite specificity under both pleadings standards and can continue.

*i.   Dismissed Counts: Categories A, B, and C*

Category A (allegations Three and Seven) discuss the Terms of Sale. Allegation Three is a lack-of-assent theory, contending that Defendant's failure to have customers acknowledge or agree to the Terms of Sale, such as by checking a box that indicates assent. This, Plaintiffs allege, amounts to a misrepresentation, deceptive act, or improper omission justifying relief under the OCSPA. As a factual matter, Plaintiffs fail to plead sufficiently that this alleged misrepresentation was *material*—i.e., that it impacted their decision to purchase the product. Just as the factual evidence in this claim is lacking, so too is the legal basis for their claim. Courts routinely enforce browsewrap agreements when the user had actual notice of the agreements, and, here, Plaintiffs do not plead an absence of notice adequately. *See Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014) (collecting cases).

---

excessive paper statement fees; and (13) refusing to provide detailed billing summaries that clearly and conspicuously show premium edition charges and paper statement fees.

(ECF No. 42 ¶ 242).

Allegation Seven charges GateHouse Ohio violated the OCSPA by continuously changing the Terms of Sale. Previously, this Court found that Plaintiffs stated a claim on whether Defendant breached the Terms of Sale by its unliterally changing these Terms. The inquiry is different in the OCSPA context. Even assuming that the adjustments to the Terms of Sale amount to a misrepresentation, act, omission, or unconscionable conduct justifying relief, it strains credulity to think that the materiality prong is fulfilled. That is to say, it strains credulity to think that a putative newspaper subscriber would *not* have subscribed to the newspaper because the newspaper retained a right to modify a seldom-read online contract. Absent allegations that the act or omission was material, Plaintiffs have not established an OCSPA claim on allegations Three and Seven.

Category B consists of allegations Six and Ten and allege an OCSPA violation due to Defendant's ability to alter the parties' agreements unilaterally and limiting customers' recovery to a de minimis amount. No OCSPA claim is established where a contract gives one party the right to modify an agreement where the modification right is limited by a notice or timing provision. *Wolfe v. J.C. Penney Corp.*, 2018-Ohio-3881, 111 N.E.3d 126. "Parties to a contract are free to insert provisions which apportion damages in the event of default." *Brondes Ford, Inc. v. Habitec Sec.*, 2015-Ohio-2441, 38 N.E.3d 1056 (quoting another source). In this case, the Terms of Sale indicate that upon amendment, "will be notified before the changes take[] effect by a reasonable means including by posting the change here, on the Website or in the newspaper." (ECF No. 48 at 32). Likewise, if a customer is billed on a monthly basis and has no specific subscription length, then Defendant GateHouse Ohio may only adjust the product price after notifying the customer "by posting, mailed letter, invoice or other reasonable method[s] . . . at least 30 days in advance." (*Id.* at 32-33). Given these express limitations, Plaintiffs cannot state an OCSPA claim based on GateHouse's alleged changes to, or authority to change, the Terms.

Further, courts frequently hold that limitation of liability provisions are not unconscionable. *Doe*, 551 F.3d at 419. Here, the Terms explain the limitations of liability.[13] Unconscionability has also not been shown for the time limit for filing a suit. *See Brondes Ford*, 2015-Ohio-2441, ¶¶ 117, 120-21, 123 (holding that a contract's conspicuous, one year-time limit for bringing claims is not unconscionable). To be deceptive, and therefore actionable, Plaintiffs must show that Defendants' inclusion of the limitation on liability and time to file are at variance with the truth, i.e., false. Plaintiffs have not shown these challenged provisions meet this standard.

Category C contains allegations Eleven, Twelve, and Thirteen, which allege inadequate disclosure of paper-statement fees and charging methods. These allegations also fall short of Rule 8. No OCSPA claim is shown where a subscriber is advised of the charges, given an opportunity to receive services without the charges, and elects every month to choose to continue to receive paper statements and to pay the corresponding fees charged for such statements. The remedy, then, is for the subscribers to elect to receive renewal notices electronically and avoid the fee for paper statements or, alternatively, cancel their subscription.

Defendant's Motion to Dismiss Category A (Allegations Three and Seven); Category B (Allegations Six and Ten); and Category C (Allegations Eleven, Twelve, and Thirteen) of Count Three is **GRANTED**, and these claims are **DISMISSED**. (*See* ECF No. 42 ¶ 224).

### ii. Remaining Categories

The remaining Categories setting forth individual claims under the claims—Categories D and E—contain sufficient factual matter to state a claim to relief that is plausible and particular on its face.

---

[13] Under a heading stating, "LIMITATION OF LIABILITY," the Terms state, in part: "You can recover from *The Columbus Dispatch* and its affiliates, resellers, distributors, and vendors only direct damages up to an amount equal to the amount you pay for the product or Website for one month. You cannot recover any other damages, including consequential, lost profits, special, indirect, incidental, or punitive damages." (Terms § 5).

Category D contains allegations One and Two, which hinge upon the advertising of term subscriptions. Plaintiffs argue that Defendant: (1) engaged in unfair, deceptive, or unconscionable conduct in violation of the OCSPA by advertising term subscriptions without a bona fide, good-faith intention of providing the subscription for the term advertised; and (2) failed to disclose clearly and conspicuously material limitations relating to premium editions when making term subscription offers. Regardless of the applicable pleading standard, Category D states a claim for relief under the OCSPA. The identified act, omission, or conduct alleged in Category D is the advertisement of term subscriptions (e.g., 13 weeks, 26 weeks, 52 weeks) for specific prices, with the subscribers expecting reasonably that they would receive the number of weeks stated in those Subscription Agreements. Instead, Plaintiffs allege plausibly and with particularity that the Defendant's representations were at variance with the truth since their subscription terms were reduced by receiving premium editions. This act or conduct was material since Plaintiffs argue that but-for this alleged misrepresentation, they would have altered their conduct, such as by not entering into a Subscription Agreement in the first place.

Identical logic can be extended to Category E. Allegations Four, Five, Eight, and Nine allege, respectively: (1) failure to disclose in advance of issuing the premium editions, the type, specific price, and the number of premium editions Defendant intended to issue; (2) failure to inform customers that they can opt-out of receiving premium editions; (3) increasing the frequency of the Subscription Agreements by steadily increasing the frequency of and charges for premium editions; and (4) issuing premium editions, such as cookbooks or puzzle books, that are unrelated to the distribution of actual news. (ECF No. 42 ¶ 224). Just as held for Category D, allegations in Category E are not incidental to the choices the consumers made, but rather material in that

Plaintiffs pled it impacted their decision to purchase the subscriptions at the outset. Defendant's Motion to Dismiss Category D and Category E is **DENIED**.

Accordingly, Defendant's Motion to Dismiss Plaintiffs' individual OCSPA claims is **GRANTED IN PART and DENIED IN PART**. (ECF No. 48). It is **GRANTED** with respect to Categories A, B, and C, and **DENIED** with respect to Categories D and E. (*Id.*).

<em>b.   Class Action OCSPA Claims</em>

To bring a class action under the OCSPA, a representative plaintiff must prove two elements: prior notice and actual damages. R.C. 1345.09(B); *Gerboc v. ContextLogic, Inc.*, 675, 680 (6th Cir. 2017).

<em>i.   Prior Notice</em>

To establish prior notice, the consumer must show that the Ohio Attorney General has "declared [the seller's practice] to be deceptive or unconscionable" or an Ohio court had "determined [the practice] . . . violate[s] [the OCSPA]." *Id.* at 680 (quoting Ohio Rev. Code § 1345.09(B)). For a previously promogulated rule or prior decision to put the defendant on notice that the conduct violates the OCSPA, there must be a "substantial similarity" between a defendant's alleged violation and the decision or rule. *Marrone v. Phillip Morris USA, Inc.*, 110 Ohio St. 3d 5, 2006-Ohio-2869, 850 N.E.2d 31, ¶ 24. "Substantial similarity" means a "similarity not in every detail, but in essential circumstances or conditions." *Id.*

Here, Plaintiffs allege that several sections of the Ohio Administrative Code (109:4-3-02(A)(1), 109:4-3-02(C), 109:4-3-02(D), 109:4-3-03(B)(1), and 109:4-3-09(B)) provided GateHouse Ohio with notice that its purported conduct violates the OCSPA. (ECF No. 42 ¶¶ 227–234.) But none of these suffices. "A general rule is not sufficient to put a reasonable person on notice of the prohibition against a specific act or practice," *Marrone*, 2006-Ohio-2869, ¶ 23, and,

36

here, the referenced code sections prohibit generic conduct rather than particular acts or practices. These general prohibitions do not put GateHouse Ohio on notice that its conduct purportedly violates the OCSPA. Moreover, Plaintiffs do not allege sufficient facts that could allow the Court to infer that GateHouse Ohio violated one of these Code provisions. Plaintiffs fail to allege how they were damaged by any purported violation of the advertising regulations that they cite. *Gerboc*, 867 F.3d at 681 (stating the plaintiff "must show that the violation damaged him somehow").

Plaintiffs also identify various judicial decisions that allegedly gave GateHouse Ohio notice that its purported conduct violates the OCSPA. (ECF No. 42 ¶ 235.) The decisions, however, do not provide that notice because default judgments, consent judgments, and agreed entries do not constitute prior notice. *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 694 (S.D. Ohio 2012) (finding that "consent judgments do not contain 'determin[ations] by a court of this state[,]' as that phrase[] is used in Ohio Revised Code § 1345.09(B)"); *Gascho v. Glob. Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 714–16 (S.D. Ohio 2013) (denying a motion for reconsideration on same issue). Plaintiffs fail to allege plausibly that GateHouse Ohio had notice that its conduct purportedly violates the OCSPA, which justifies dismissal of this claim.

*ii. Actual Damages*

Plaintiffs also fail to allege plausibly that they suffered actual damages. Even if the Administrative Code provisions Plaintiffs cite could constitute prior notice, a plaintiff "must allege more than a mere violation—he must show that the violation damaged him somehow." *Gerboc*, 877 F.3d at 681. Again, the regulations Plaintiffs cite primarily relate to advertising, and Plaintiffs fail to allege how they were damaged by any purported violation of those advertising regulations. In the absence of any allegation that any one of these Plaintiffs subscribed to *The Columbus Dispatch* based on his or her reliance on a specific advertisement that they claim is false or

misleading, there can be no claim that any harm they allegedly suffered as a subscriber was proximately caused by a violation of the advertising regulations they cite. Plaintiffs have not plausibly alleged notice or actual damages. As such, the Court **DISMISSES** the class-action portion of Plaintiffs' OCSPA claim along with portions of the individual claims.

### 4. Counts Four, Six, and Seven: Declaratory Judgment Claims

To maintain their declaratory-judgment claims, Plaintiffs must plead facts plausibly showing that: (1) a real controversy exists between the parties; (2) the controversy is justiciable; and (3) speedy relief is necessary to preserve the rights of the parties. *Moore v. Middletown*, 133 Ohio St. 3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 49. Plaintiffs have failed to do so here. Nothing in Plaintiffs' Amended Complaint demonstrates plausibly that speedy relief is necessary to preserve the rights of the parties. The Amended Complaint, instead, contains various allegations asserting that GateHouse Ohio has engaged in allegedly unfair and deceptive acts since 2015. (ECF No. 42 ¶¶ 3-4, 70.) Other allegations assert that GateHouse Ohio has increased the number and price of premium editions since at least 2016. (*Id.* ¶¶ 79-80.) Nothing in the Amended Complaint shows how speedy resolution of this alleged three- and four-year-old conduct is necessary to preserve the rights of the parties. *Cf. Zaremba v. Marvin Lumber & Cedar Co.*, 458 F. Supp. 2d 545, 552–53 (N.D. Ohio 2006) (holding that a plaintiff's request for a declaration that the defendant's warranty and limitation of remedies are unconscionable did "not present a situation where speedy relief is necessary to preserve the rights of the parties"). In addition, a court should decline to entertain declaratory-judgment claims when "there is no relief this court could have granted in a declaratory judgment action that could not have been awarded if plaintiffs prevailed on [their] direct claims." *Superior Care Pharmacy, Inc. v. Med. Shoppe Int'l, Inc.*, No. 2:10-CV-207, 2011 WL 597065, at *15 (S.D. Ohio Feb. 10, 2011). Because Plaintiffs have not pleaded the

necessity of speedy relief in any of their declaratory-judgment claims and would not get any relief that could not have been awarded by their direct claims, the Court **DISMISSES** those claims.

### 5. Count Five: Ohio Deceptive Trade Practices Act

Defendant GateHouse Ohio argues that Plaintiffs have no standing to bring a claim under the Ohio Deceptive Trade Practices Act ("ODTPA"). This Court is persuaded that consumers lack standing to bring an ODTPA claim. *In re Porsche Cars N. Am.,* 880 F.Supp.2d 801, 874 (S.D.Ohio 2012); *Gascho v. Global Fitness Holdings, LLC,* 863 F.Supp.2d 677, 699 (S.D.Ohio 2012) (noting that at least one Ohio appellate court has found that consumers lack standing under the ODTPA and judges in the Northern District of Ohio have consistently found that consumers lack standing under the ODTPA); *see also Allen v. Andersen Windows, Inc.,* 913 F.Supp.2d 490, 513 (S.D.Ohio 2012) ("see[ing] no reason to depart from its holding in *In re Porsche* " and dismissing consumer's ODTPA claim). Therefore, as individual consumers, Plaintiffs lack standing to bring a claim under the ODTPA, and this claim is **DISMISSED**.

### 6. Count Eight: Unjust Enrichment

The elements of an unjust-enrichment claim under Ohio law are: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Marlowe v. Nature's Bounty Co.*, No. 1:17 CV 332, 2017 WL 2291683, at *3 (N.D. Ohio May 25, 2017). Unjust enrichment is a doctrine from equity law that "operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another." *Beatley v. Beatley*, 160 Ohio App. 3d 600, 2005-Ohio-1846, 828 N.E.2d 180, ¶ 61 (10th Dist.) (quoting *Turner v. Langenbrunner*, 12th Dist. Warren No. CA2003-10-099, 2004- Ohio-2814, ¶ 38). "A party seeking a remedy under a contract

cannot also seek equitable relief under a theory of unjust enrichment or quantum meruit, because the terms of the agreement define the parties' relationship in the absence of fraud, bad faith or illegality." *Long v. State Farm Ins.*, No. 2:13-cv-786, 2014 WL 12654134, at *5 (S.D. Ohio June 3, 2014) (quoting *Wolfer Enters., Inc. v. Overbrook Dev. Corp.*, 724 N.E.2d 1251, 1253 (Ohio Ct. App. 1999)).

The Terms of Sale and Subscription Agreements govern the parties' relationship, and as a result, GateHouse Ohio was not unjustly by Plaintiffs paying for and receiving the bargained-for terms. Dismissal is proper since the Amended Complaint cannot plausibly be read to allege that no valid contract existed. *RLFShop*, 2019 WL 499835, at *7; *Am. Casual Dining, L.P. v. Moe's Sw. Grill*, L.L.C., 426 F. Supp. 2d 1356, 1372 (N.D. Ga. 2006); *Samuels v. Old Kent Bank, No. 96 C 6667*, 1997 WL 458434, at *14–15 (N.D. Ill. Aug. 1, 1997).  Plaintiffs' unjust-enrichment claim is **DISMISSED**.

### 7. Count Nine: Injunctive Relief

Plaintiffs allege that the OCSPA and the ODTPA provide for injunctive relief when those statutes are violated. (ECF No. 42 ¶ 273.) But as explained above, Plaintiffs' OCSPA claim fails as a matter of law, and they lack standing to assert an ODTPA claim. Count Nine is **DISMISSED**.

## V.   CONCLUSION

Based on the foregoing, this Court holds as follows: (1) Defendant Copley Ohio's Motion to Dismiss is **GRANTED** for Lack of Subject-Matter Jurisdiction, (ECF No. 65); (2) The Holding Company Defendants' Motion to Dismiss is **GRANTED** for Lack of Personal Jurisdiction, (ECF No. 66); (3) Plaintiffs' Motion to Disregard is **GRANTED**, (ECF No. 53); (4) Defendant GateHouse Ohio's Motion to Strike is **GRANTED**, but only insofar as it is construed as a Motion

to Disregard, (ECF No. 57); and (5) Defendant GateHouse Ohio's Motion to Dismiss for Failure
to State a Claim **GRANTED IN PART and DENIED IN PART**, (ECF No. 48).

      **IT IS SO ORDERED.**

                                    **ALGENON L. MARBLEY**
                                    **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  March 4, 2021**