IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN EWALT, et al.,

    Plaintiffs,

    v.

GATEHOUSE MEDIA OHIO
HOLDING II, INC., d/b/a THE
COLUMBUS DISPATCH, et al.,

    Defendants.

Case No. 2:19-cv-4262
Chief Judge Algenon L. Marbley
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion to Compel (Doc. 146). For the following reasons, Plaintiffs' Motion is **GRANTED**.

**I.  BACKGROUND**

The Court previously summarized the background of this case:

> This case concerns Defendants' alleged deceptive trade practices that damaged subscribers to the Columbus Dispatch. According to Plaintiffs, "the GateHouse Defendants advertise and offer term subscriptions to The Dispatch … for specific prices, and their customers enter into these agreements … reasonably expecting that the GateHouse Defendants will provide The Dispatch for the number of weeks stated in those Subscription Agreements." (Doc. 42, ¶ 5). Instead, Plaintiffs allege, "the GateHouse Defendants reduce their customers' term subscriptions by sending their customers unsolicited 'premium editions' and decreasing the length of those subscriptions based on the value the GateHouse Defendants arbitrarily assign to these premium editions." (*Id.*, ¶ 7).

(Doc. 97 at 1–2).

Now, the parties are engaging in discovery. Plaintiffs submitted an interrogatory requesting Defendant GateHouse Media Ohio Holdings II, Inc. to "state th[e] cost that its affiliates charged for the premium editions at issue . . . ." (Doc. 138 at 2). In response, Defendant "identifie[d] which premium editions were issued by other newspapers and provided a range of

the prices charged during this period by other newspapers for premium editions." (Doc. 139 at 1). It did not, however, provide any information about which particular editions the affiliates published, nor how much they charged for each edition. (*Id.* at 1–2). Defendant argued that obtaining that particular information would require "each affiliate to review its publication and pricing records, to the extent such records even exist[,]" that such information is outside of its possession, custody, or control, and is too burdensome to produce. (*Id.* at 2–3).

The parties came before the Court for a status conference to discuss their dispute, after which Defendant was ordered to provide a sworn declaration regarding its representations about the interrogatory. (Doc. 140). Defendant provided a declaration made by Stacey Martin, the Vice President of Design Center for Defendant's parent company, Gannett Co., Inc. (Doc. 145, ¶ 2). Departing from previous representations that the information was beyond reasonable reach, the declaration provides that there is centralized information about premium editions in 2021, from approximately 200 newspapers, and that "a spreadsheet setting forth the newspaper name, premium edition name, dates of issuance and price, will be provided to Plaintiffs' counsel." (*Id.*, ¶ 28). Additionally, some incomplete, informally collected information about premium editions from 2019 and 2020 will be provided to Plaintiffs. (*Id.*, ¶¶ 11–14, 29–30). Yet, the declaration was insistent that completing the collection of that information would require "every newspaper to search its own records in an attempt to determine what premium editions were issued on what dates and for what prices[,]" that "such information is not consistently available, and that there are concerns the limited information that is available does not always reflect what premium editions actually ran." (*Id.*, ¶ 31).

Plaintiffs were then given leave to submit a position statement, indicating whether they considered the dispute resolved, and, if not, describing what they still sought. (Doc. 143).

2

Plaintiffs made clear that the declaration had not resolved the dispute, and they still sought to have Defendant respond to the interrogatory in full, "by identifying (1) *The Columbus Dispatch* premium editions that were issued by GateHouse affiliates; and (2) the amounts those affiliates charged for the premium editions." (Doc. 146 at 1). The parties have briefed their positions, and the matter is ripe for consideration.

## II.     STANDARD

Two federal rules matter here. Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37, for its part, allows for a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or to provide proper responses to requests for production of documents under Rule 34. *See* Fed. R. Civ. P. 37(a)(1), (3). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine,* 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

## III.     DISCUSSION

Defendant argues it would be improper for the Court to compel it to respond to the interrogatory because: (1) the information is only minimally relevant; (2) acquiring the requested information would be unduly burdensome; and (3) the information is not within Defendant's "possession, custody, or control," as required by Rule 34 of the Federal Rules of Civil Procedure. (Doc. 139 at 2–4).  The Court disagrees.

Beginning with relevance, Plaintiffs assert that the value of the premium editions is of central importance to the case because the challenged subscription agreement "only permits GateHouse to shorten a customer's subscription 'in proportion to the *value* of the number of premium editions published and delivered to [the subscriber] during [the] subscription period.'" (Doc. 138 at 1) (emphasis in original) (quoting Doc. 109-1 at 16–17).  Accordingly, the prices affiliates charged for the same premium editions are relevant to their relative value and may help the parties evidence the reasonableness of the prices charged by GateHouse Ohio for its premium editions, and thus the reasonableness of the shortened subscriptions.  Defendants counter only that the price an affiliate charged for premium editions may be influenced by other factors, like geographical cost of living, inflation, and how the premium editions fit into the affiliate's overall pricing model.  (Doc. 139 at 2).  But these arguments speak to the persuasiveness of the information, not its relevance to the case's claims.  Plaintiffs have satisfied the burden of proving that the information sought is relevant.

Regarding burden, Defendant originally maintained that sourcing, reviewing, and compiling the information needed to respond to the interrogatory "would likely take weeks of focused effort, if not longer." (*Id.* at 2–3).  Yet, in the week between the status conference and the submission of the sworn declaration, Defendant was able to source centralized content from over 200 newspapers for the year 2021, and managed to collect decentralized information through

4

informal polling of seventeen out of the approximately eighty newspapers affiliated with Defendant during the years 2019 and 2020. (*See* Doc. 145). Given this experience, answering Plaintiffs' interrogatory may require minimal effort. Indeed, Defendant may replicate its prior efforts and contact representatives from the remaining affiliate newspapers for the requested information.

Defendant raises concerns about how consistently the affiliated newspapers have maintained, or will be able to access, the requested information. (Doc. 145, ¶¶ 17–19, 23–25). True, recordkeeping might vary among the affiliates contacted. Some affiliates may have tracked this information in a systematic way. Some may be able to source the information quickly in an *ad hoc* fashion. This might be accomplished, as Plaintiffs suggest, by doing something as simple as pulling a subscriber account statement for the relevant years, seeing which premium editions were issued and how much the subscriber was charged for each. (Doc. 146 at 2 n.2). Some may be unresponsive or unable to collect all the requested information. But, at a minimum, it is incumbent upon Defendant to ask the affiliated newspapers for such information, compile what is produced, and send it to Plaintiffs. That does not amount to the "extensive research" Defendant suggests (Doc. 139 at 2–3), and is not unduly burdensome. If an affiliated newspaper is unable to provide the information for an unforeseen reason, the Undersigned will consider that separately. But, as a general matter, Defendant must request and produce information that is readily accessible.

Finally, this information is within Defendant's control. "A party has control for the purposes of Rule 34 if it has the legal right to obtain the requested documents on demand." *In re Porsche Cars N. Am., Inc.*, No. 2:11-md-2233, 2012 WL 4361430, at *4 (S.D. Ohio Sept. 25, 2012) (citing *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995)). "When a party argues that one company has the legal right to demand documents from another company, courts closely

analyze the relationship between the two companies." *Id.* Here, Defendant argues it cannot be said to have control over information from affiliated newspapers (Doc. 139 at 3–4), even though the newspapers are affiliated under the same parent company, Gannett Co., Inc. (formerly New Media Investment Group Inc.). (Doc. 145, ¶ 4). Namely, it argues that the Court's holding that Defendant was a distinct corporate entity from its parent companies, for personal jurisdiction purposes (Doc. 105 at 11–14), is dispositive of the instant question. (Doc. 139 at 4).

Yet, the type of "alter-ego" relatedness that was central to that previous holding is only one means of demonstrating a corporate relationship sufficient for Rule 34 purposes. *In re Porsche*, 2012 WL 4361430, at *4. Here, the record demonstrates that among Defendant, its affiliates, and their parent company, there is sufficient sharing of "documents . . . in the regular course of business [to] support a finding of control." *Id.* Plaintiffs, for example, provided email correspondence between the parent company and affiliates requesting information about premium editions to be compiled in a spreadsheet. (Doc. 146 at 2). That exchange of information is substantiated by Ms. Martin's declaration (Doc. 145, ¶ 12), as are several other instances of similar information being collected (*id.*, ¶¶ 11, 13–14). Within the past year, this exchange of information about premium editions was systematized across all affiliate newspapers and tracked consistently. (*Id.*, ¶¶ 26–28). Simply put, Plaintiffs have made "specific requests [of Defendant] for which a related corporate entity is likely to have responsive documents . . . ." *In re Porsche*, 2012 WL 4361430, at *4.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel (Doc. 146) is **GRANTED**. Defendant is **ORDERED** to answer Plaintiffs' interrogatory **within thirty (30) days** of the date of this Order. Additionally, Defendant shall file a notice to the docket once the responsive production has been sent to Plaintiffs.

6

IT IS SO ORDERED.


Date: December 16, 2021                  /s/ Kimberly A. Jolson
                                         KIMBERLY A. JOLSON
                                         UNITED STATES MAGISTRATE JUDGE