# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

John Ewalt, *et al.*,

      Plaintiffs,

      v.

Gatehouse Media Ohio Holdings II, Inc., *et al.*,

      Defendants.

Case No. 2:19-cv-4262

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

John Ewalt, Steve Wylie, and Bonnie Navarre (collectively, "Plaintiffs")

move for class certification. ECF Nos. 224 & 243.[1] Gatehouse Media Ohio

Holdings II, Inc. ("Defendant") opposes. ECF No. 232 & 242. For the following

reasons, Plaintiffs' motion is **DENIED**.

## I.    FACTS

Defendant owns and operates the *Columbus Dispatch* (the "*Dispatch*"), a

long-standing and successful newspaper in Columbus, Ohio. Sec. Am. Compl.

¶¶ 57–62, ECF No. 181. Plaintiffs were or are subscribers to the *Dispatch*. *Id.*

¶¶ 135, 139, 141. Plaintiffs allege that Defendant wronged subscribers with its

practices around "premium editions." *See generally, id.* Among other things,

Plaintiffs allege that a subscriber would sign up for a certain-length–subscription

---

[1] There are sealed and unsealed versions of the briefing on class certification. ECF Nos. 224, 232, 242, 243, 244, & 245. If possible, the Court cites the unsealed versions throughout this Opinion and Order.

but that Defendant would shorten the length of the subscription based on the price of premium editions (the "premium edition program"). *Id*. ¶¶ 33–56. As a hypothetical example, suppose a person signs up for a 52-week subscription for $104 (or $2 a week), paid up front. During that 52-week period, Defendant sends the person four premium editions at $5 each, or $20 total for premium editions. Defendant then subtracts that $20 from the up-front $104 payment to get $84, which means that the subscription "runs out" of money before the full 52 weeks and ends early. In addition, Plaintiffs allege that Defendant acted wrongfully because the premium editions were not, in fact, "premium." *See generally, id.*

Plaintiffs allege this practice was misleading and assert claims for fraud and breach of contract on an individual and class-wide basis. *Id*. ¶¶ 174–209. Plaintiffs also assert a claim under the Ohio Consumer Sales Practices Act ("OCSPA") on only their own behalf. *Id*. ¶¶ 210–26.

Plaintiffs now move to certify the following class:

> All persons who purchased a subscription for delivery of The Columbus Dispatch and had the length of the subscription shortened based on charges for one or more premium editions. Employees, legal representatives, officers, or directors of Gatehouse Media Ohio Holdings II, Inc. or of other entities affiliated with Gatehouse Media Ohio Holdings II, Inc., and the judges assigned to this case and their staff are excluded from the class.

Mot. 1, ECF No. 224.

## II.    STANDARD OF REVIEW

The "class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks and citations omitted). "A district court has broad discretion to decide whether to certify a class," and "[c]lass certification is appropriate if the court finds, after conducting a rigorous analysis, that the requirements of Rule 23 have been met." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850–51 (6th Cir. 2013) (internal quotation marks and citations omitted). As the United States Court of Appeals for the Sixth Circuit has explained,

> Ordinarily, this means that the class determination should be predicated on evidence presented by the parties concerning the maintainability of the class action. . . On occasion it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question . . . and rigorous analysis may involve some overlap between the proof necessary for class certification and the proof required to establish the merits of the plaintiffs' underlying claims.

*Id.* at 851 (internal quotation marks and citations omitted). Therefore, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "The party seeking the class certification bears the burden of proof" that the prerequisites to certification are met. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing cases).

## III. ANALYSIS

To succeed on a motion for class certification, a plaintiff must show that the Rule 23(a) and 23(b)(3) requirements are satisfied.

To satisfy Rule 23(a), a plaintiff must show that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

"These four requirements—numerosity, commonality, typicality, and adequate representation—serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members." *In re Whirlpool*, 722 F.3d at 850 (citing *Dukes*, 564 U.S. at 349). Finally, although not specified in Rule 23(a) itself, the four enumerated requirements lead to a fifth, common sense requirement that the class members be "ascertainable." *See McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 387 (S.D. Ohio 2001) (noting that a plaintiff must define "the class such that a court can ascertain its membership in some objective manner").

Along with fulfilling the prerequisites of Rule 23(a), "the proposed class must also meet at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool*, 722 F.3d at 850 (citations omitted). Here, Plaintiffs move for class certification under Rule 23(b)(3). That section allows for class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to

other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

Plaintiffs' motion for class certification fails because Plaintiffs cannot satisfy the Rule 23(a) requirements of commonality and typicality, or the Rule 23(b)(3) predominance requirement.

## A.  Commonality

To demonstrate commonality under Rule 23(a)(2), Plaintiffs must show, among other things, that class members have all suffered the same injury. *Dukes*, 564 U.S. at 349–50 (citation omitted).  In addition, class members' claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution."  *Id*. at 350.  That means that "determination of [the contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*.  In other words, the commonality inquiry asks whether a class action will "generate common *answers* apt to drive resolution of the lawsuit."  *Id*. (emphasis in original; quotation marks and citation omitted).

Not every common question satisfies the commonality requirement; at some point of generality and abstraction "almost any set of claims can be said to display commonality."  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  Instead, to satisfy Rule 23(a)(2), the case must present a "common issue the resolution of which will advance the litigation."  *Id*.

Here, Plaintiffs cannot satisfy commonality.  Plaintiffs point to many allegedly common *questions*, but do not explain whether, or how, those questions would have common *answers*, which is what the Supreme Court requires.  *Dukes*, 564 U.S. at 350

Plaintiffs' biggest obstacle to class certification is the fact that different class members received different information and disclosures about the premium edition program.  The information was shared through different means (including letters, disclosures with billing statements, and online) and, although the overall meaning among the disclosures was the same, they had meaningfully different content at different times.

Consider how that affects the contract claim.  Plaintiffs argue, *inter alia*, that Defendant breached its contracts with subscribers because, through the information it gave to subscribers, it promised that the premium editions would have "additional value."  However, Defendant did not uniformly make that promise.  In some disclosures, there is no promise of extra value at all, but only an explanation that the price of the premium edition would depend in part on its "value."  *E.g.*, ECF 232-2, at PAGEID # 9076.  In others, Defendant represented that the premium editions provide "additional information and value" without much additional detail.  *E.g.*, ECF 232-6, at PAGEID # 9384.  In others, Defendant provided descriptive examples of the premium editions.  *E.g.*, ECF No. 232-2, at PAGEID # 9076.

These differences are fatal to commonality. Simply put, the allegedly common question of "did Defendant breach the contract" is not common because there are many different contracts with meaningfully different language. Indeed, even a single class member may have multiple contracts with Defendants, each with different language. Because the legal question of whether Defendant breached depends on the language of the contract—and because the language of the contracts is not uniform—there is no commonality.

Plaintiffs disagree, arguing that Defendant printed an explanation of the premium edition program in every paper. According to Plaintiffs, this fact trumps the differences in disclosures in other contexts and, therefore, there is commonality. The Court disagrees. First, the Court doubts that the disclosures printed in the paper created the "contract" at issue in the breach-of-contract claim. And the evidence shows that, like the other disclaimers, the explanation printed in the dispatch changed over time and class members were subscribers for different periods of time. *Compare* ECF No. 232-6, at PAGEID # 9377 *with* ECF No. 232-7, at PAGEID # 9452. Accordingly, this argument is unpersuasive.

The fraud claim has similar problems. Plaintiffs propose the following common question: did Defendant commit fraud by offering subscriptions "up to" a given term while *knowing* the subscriber would never get that full term because of the Premium Edition framework?

Again, the differences in disclosures destroy commonality. Some subscribers received disclosures that, at least arguably, make it clear that the

subscriber would not receive the full subscription, sometimes with illustrative examples. *E.g.*, ECF No. 232-5, at PAGEID # 9233–34. Other disclosures are (again, arguably) a closer call; for example, some disclosures say only that, because of the premium editions, Defendant will "adjust the length of your subscription, accelerating your subscription expiration date" without further information. *E.g.*, ECF No. 232-2, at PAGEID # 9075–76. Put simply: an answer to the question "was Defendant fraudulent to offer 'up to' subscriptions with a less-than-clear disclosure about premium editions" would not necessarily resolve whether Defendant acted fraudulently when it sent the disclosures with illustrative examples. On top of that, many class members received more than one disclosure. Thus, the Court would also need to consider whether different combinations of disclosures amount to fraud.

In sum, commonality is not satisfied. Alternatively, Plaintiffs cannot satisfy typicality or predominance.

## B. Typicality

To prove typicality, Plaintiffs must prove that the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Sprague*, 133 F.3d at 399 (quotation marks and citation omitted). This requirement ensures that the class representative's interests are aligned with the interests of the class members so that, by pursuing his or her own interests, the class representative "will also advance the interests of the class members." *Id.* (quotation marks and citations omitted). A class representative's claim is typical of the class if it "arises

from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d at 1082 (quotation marks and citation omitted).

As described above, different subscribers received different information about the premium edition program. Plaintiffs did not receive all the variations of these disclosures. Thus, Plaintiffs' claims would be typical of only the claims of class members who received the same subscriber forms as named Plaintiffs.

Plaintiffs have a similar problem with their theory of the breach of the duty of good faith and fair dealing. Distilled, Plaintiffs' theory is that Defendant did not act in good faith when it set the prices for the Premium Editions. There are many different Premium Editions, assigned many different prices, over many different years. If Plaintiffs establish that Defendant breached the duty of good faith and fair dealing as to one premium edition, that would not necessarily mean that Defendant had done so for *every* premium edition. In other words, it could be that Defendant breached the duty of good faith and fair dealing as to *some* Premium Editions, but not any of the Premium editions one or more of the named Plaintiffs received. On the flip side, it could be that many people who fall under the class definition did not receive the premium edition that a named Plaintiff received and that, for which, Defendant is found have breached a duty of good faith and fair dealing. In both cases, Plaintiffs' claims would not be typical of everyone in the class.

In sum, even if Plaintiffs prevailed (or failed) on their claims, that would not necessarily demand the same result for everyone else's claims. *See Sprague*, 133 F.3d at 399. Thus, typicality is not satisfied.[2]

## C. Predominance

In the alternative (again), Plaintiffs' motion must be denied because Plaintiffs have not established predominance. To do so, a plaintiff must demonstrate the common questions actually predominate over any individual issues. Fed. R. Civ. P. 23(b)(3). The "predominance requirement demands more than the commonality requirement." *Fox v. Saginaw Cnty., Michigan*, 67 F.4th 284, 301 (6th Cir. 2023) (citation omitted). To determine whether individual issues predominate, courts must "add up all the suit's common issues (those that the court can resolve in a yes-or-no fashion for the class) and all of its individual issues (those that the court must resolve on an individual-by-individual basis)." *Id*. at 300 (citation omitted).

Even if the Court determined that Plaintiffs had identified some common issues, those common questions do not predominate.

First, the differences in disclosures create many individualized issues with proving the merits of the breach-of-contract claim. As explained above, whether

---

[2] True, Plaintiffs'' claims are likely typical of *some* class members' claims. That does not change the outcome. Plaintiffs seek to certify only this broad class; they do not seek to certify a class of only those with similar facts as Plaintiffs; nor do they seek to certify sub-classes. The Court does not consider whether Plaintiffs' claims would be typical of a hypothetical, otherwise-defined class.

Defendant breached a particular promise—or acted fraudulently—will require a form-by-form and person-by-person analysis.  Even if some parts of the analysis could be considered in common for everyone who received a certain disclosure, the many individual inquiries outweigh the common ones.

Second, the fraud claim presents another predominance problem: reliance. To succeed on these claims, Plaintiffs will have to prove that they justifiably relied on Defendant's alleged misrepresentations.  *See, e.g.*, *WWSD, LLC v. Woods*, No. 20AP-403, 2023 WL 5769462, at *2 (Ohio Ct. App. Sept. 7, 2023) ("To prevail on a fraud claim, a plaintiff must prove . . . justifiable reliance upon the representation or concealment[.]" (quotation marks and citation omitted)). Reliance is generally an individualized issue.  *See Metz v. Unizan Bank*, No. 5:05 CV 1510, 2009 WL 10713772, at *3 (N.D. Ohio Mar. 24, 2009) (explaining that "individual issues predominate over common issues in cases where reasonable reliance is an element of the plaintiffs' claims[.]" (citing cases)).

True, when "there are uniform presentations of allegedly misleading information," reliance does not stymie class certification.  *See Stanich v. Travelers Indem. Co.*, 249 F.R.D. 506, 518 (N.D. Ohio 2008).  However, as discussed above, there is *not* a uniform presentation of information about the premium editions program.  Thus, because different class members saw different disclosures (and different combinations of disclosures), whether reliance was justified will be an individualized inquiry.  For example, if a class member received only the less-clear versions of the disclosures, that person might be

able to satisfy the justified reliance element.  In contrast, the person who received a disclosure that included a hypothetical example of how premium editions shorten the subscription might not be able to prove that element.  At bottom, reliance will be an individualized issue.  *See* Fed. R. Civ. P. 23, Advisory Committee Notes to the 1966 Amendment ("[A] fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.").[3]

Third, under Ohio law, the duty of good faith and fair dealing "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Pertoria, Inc. v. Bowling Green State Univ.*, No. 13AP-1033, 14AP-63, ¶ 22 2014 WL 4291637, at *6 (Ohio Ct. App. Sept. 2, 2014) (quotation marks and citations omitted).  As with reliance in the fraud claim, determining what each subscriber's "justified expectations" were, in connection with a breach of contract claim, would be an individualized consideration about which disclosures each person received.

Moreover, Defendant also argues that several affirmative defenses would have to be determined on an individual basis and would defeat predominance.

---

[3] On a motion to strike class allegations, the Court concluded that, based on the allegations in the Second Amended Complaint, reliance could be presumed in this case. Opinion and Order 38, ECF No. 220.  Now, of course, the case is at a different procedural posture and the evidence now before the Court dictates a different conclusion.

Of course, in some cases, class certification may be appropriate even if there are "some affirmative defenses peculiar to some individual class members." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020) (quotation marks and citation omitted). Here, however, at least one affirmative defense— the voluntary payment doctrine—may (or may not) apply to many (but not all) class members, and determining its applicability to the breach-of-contract claim would require an individualized inquiry.

Under Ohio law, "a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution." *Scott v. Fairbanks Cap. Corp.*, 284 F. Supp. 2d 880, 894 (S.D. Ohio 2003) (quotation marks and citations omitted).

Here, many class members' claims may be defeated by the voluntary payment doctrine. Among other bases for this defense, Defendant submits evidence that some subscribers called Defendant to discuss the premium edition program, received detailed information about the same, and still decided to continue receiving premium editions as part of their subscription. *E.g.*, 232-3, at PAGEID # 9110–12. Similarly, the subscribers who received the more in-depth disclosures may also have had "full knowledge" of the premium edition program, but still chose to pay. Both of these groups of subscribers' claims may fail under the voluntary payment doctrine because they had "full knowledge of the facts" but still chose to pay Defendant.

However, whether the voluntary payment doctrine applies to a particular claim will be a person-by-person analysis. Defendant would need to put on evidence about whether each person had "full knowledge of the facts," either from a phone conversation or something else. There is no way to do so on a class-wide basis. Thus, the voluntary payment doctrine is yet another individualized issue that predominates.

At bottom, even if there are some common issues, the individual issues predominate. As a result, Plaintiffs' motion for class certification must be **DENIED**.

## IV. SUPPLEMENTAL JURISDICTION

The Court had subject-matter jurisdiction over this case because of the Class Action Fairness Act ("CAFA"). The Court lacks independent subject-matter jurisdiction over the individual state-law claims[4] and declines to exercise supplemental jurisdiction over the same.

When deciding whether to exercise supplemental jurisdiction, a district court shall "consider and weigh several factors" when determining whether to exercise supplemental jurisdiction, including the "values of judicial economy, convenience, fairness, and comity." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350

---

[4] Although the parties are diverse, the amount in controversy is well below $75,000. *See, e.g.*, Sec. Am. Compl. ¶¶ 88, ECF No. 181 (alleging that the total charges of premium editions were less than $1000); *Id*. ¶ 138 (alleging Mr. Ewalt paid almost $600 for premium editions).

(1988)). District courts can also consider factors such as whether the plaintiff engaged in "manipulative tactics"; whether discovery had been completed; the degree of familiarity the court has with the issues; and if the court had invested significant time in the decision. *Gamel*, 625 F.3d at 952 (citations omitted).

On balance, the Court finds these factors weigh against exercising supplemental jurisdiction. First, all claims over which the Court had original jurisdiction have been dismissed. Second, this case is still at the class certification stage. Next, although this case has been pending for several years and Chief Judge Marbley has issued substantive opinions, the case was recently transferred to me, and I have issued only this opinion. Thus, a state-court judge would have virtually the same familiarity with the case as I do. Finally, there is "a strong presumption in favor of dismissing supplemental claims" once the claim over which the Court has original jurisdiction have been dismissed. *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996), *amended on other grounds on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998) (citing cases"). These factors taken together weigh against the continued exercise of supplemental jurisdiction. Accordingly, the Court declines to exercise supplemental jurisdiction over the individual state-law claims.

## V. CONCLUSION

For these reasons, the motion for class certification is **DENIED**. Because the Court declines to exercise supplemental jurisdiction over the individual state-

law claims, the case is **REMANDED** to the Franklin County Court of Common Pleas.

The Clerk shall terminate all pending motions and close the case. The Clerk shall **NOT** certify a copy of this Opinion and Order to the Franklin County Court of Common Pleas for **SEVEN DAYS**, to give the parties a chance to appeal.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**